**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 26-1062**

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————

BROADBAND COMMUNICATIONS ASSOCIATION OF PENNSYLVANIA; BROADBAND COMMUNICATIONS ASSOCIATION OF WASHINGTON; INDIANA CABLE AND BROADBAND ASSOCIATION; MISSISSIPPI INTERNET AND TELEVISION; TENNESSEE CABLE & BROADBAND ASSOCIATION; VCTA – BROADBAND ASSOCIATION OF VIRGINIA; and NEWSMAX MEDIA INC.,

*Appellants/Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION,

*Appellee/Respondent*.

—————————

On Notice of Appeal from
an Order of the Federal Communications Commission,
MB Docket No. 25-331

—————————

### APPELLANTS/PETITIONERS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY AND INJUNCTION PENDING APPEAL

—————————

JONATHAN A. FRIEDMAN
MICHAEL D. HURWITZ
SAMUEL H. ECKLAND
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006

PAUL D. CLEMENT
JAMES Y. XI
KEVIN WYNOSKY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Appellants/Petitioners Broadband Communications Association of Pennsylvania; Broadband Communications Association of Washington; Indiana Cable and Broadband Association; Mississippi Internet and Television; Tennessee Cable & Broadband Association, and VCTA – Broadband Association of Virginia*
*(Additional Counsel Listed on Inside Cover)*

March 27, 2026

MARK I. BAILEN P.C.
BAILEN LAW
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
(202) 656-0422
mb@bailenlaw.com

*Counsel for Appellant/Petitioner Newsmax Media Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ ii

GLOSSARY OF ABBREVIATIONS ........................................................... v

INTRODUCTION ...................................................................................... 1

ARGUMENT .............................................................................................. 2

I.      Appellants Are Likely To Succeed ............................................... 2

          A.     The Court Has Jurisdiction ................................................. 2

          B.     Waiving the National and Local Ownership Rules Was Unlawful ........................................................................... 4

          C.     Granting the Applications Without a Hearing Was Unlawful ............ 10

II.     The Remaining Factors Support A Stay ....................................... 11

CONCLUSION ........................................................................................... 13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Cases**

*Astroline Comm'cns v. FCC*,
    857 F.2d 1556 (D.C. Cir. 1988) ....................................................................11

*Baldwin v. U.S.*,
    589 U.S. 1231 (2020)....................................................................................1

*Biden v. Nebraska*,
    600 U.S. 477 (2023)......................................................................................6

*Biden v. Texas*,
    597 U.S. 785 (2022)......................................................................................3

*Carlson v. Postal Regul. Comm'n*,
    938 F.3d 337 (D.C. Cir. 2019) ......................................................................8

*Citizens for Jazz v. FCC*,
    775 F.2d 392 (D.C. Cir. 1985) ....................................................................11

*FCC v. Nat'l Citizens Comm. for Broad.*,
    436 U.S. 775 (1978)....................................................................................11

*FTC v. H.J. Heinz*,
    246 F.3d 708 (D.C. Cir. 2001) ....................................................................12

*Gamble v. U.S.*,
    587 U.S. 678 (2019)......................................................................................4

*Gulf Restoration Network v. Haaland*,
    47 F.4th 795 (D.C. Cir. 2022) ......................................................................8

*In re Nat'l Nurses United*,
    47 F.4th 746 (D.C. Cir. 2022) ......................................................................3

*Int'l Telecard v. FCC*,
    166 F.3d 387 (D.C. Cir. 1999) ......................................................................2

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)...................................................................................3, 6

*Sierra Club v. FERC*,
   145 F.4th 74 (D.C. Cir. 2025) ................................................................2

*U.S. v. Skrmetti*,
   605 U.S. 495 (2025).................................................................................5

*U.S. v. Storer Broad.*,
   351 U.S. 192 (1956).................................................................................9

*W. Union v. FCC*,
   773 F.2d 375 (D.C. Cir. 1985) ...............................................................3

*WAIT Radio v. FCC*,
   418 F.2d 1153 (D.C. Cir. 1969)..............................................................7

**Statutes**

Pub.L.104-104, 110 Stat. 56 (1996)...............................................................5

Pub.L.108-199, 118 Stat. 3 (2004)..................................................................5

**Rules**

47 C.F.R. §0.283(c) ......................................................................................7, 9

47 C.F.R. §0.5(c) .............................................................................................7

**Other Authorities**

*Amendment of Section 73.3555(E)*,
   31 FCC.Rcd. 10213 (2016)......................................................................7

Biard Declaration, *California v. Nexstar*,
   No.2:26-cv-978 (E.D.Cal. 2026) (Dkt.73-8) .......................................12

*Benedek License Corp.*,
   13 FCC.Rcd. 18913 (1998)................................................................ 8, 10

*Clear Channel Broad. Licenses*,
   22 FCC.Rcd. 21196 (2007)....................................................................10

Opp'n to Mot. for Temp. Restraining Order, *California v. Nexstar*,
   No.2:26-cv-978 (E.D.Cal. 2026) (Dkt.73)......................................11, 12

Oral Argument, *Free Press v. FCC*,
No.17-1129 (D.C. Cir. 2018), https://perma.cc/FE5L-N6M8 .........................6, 11

*Ted Cruz Criticizes FCC on Nexstar Merger, No Full Vote*, Newsmax
(Mar. 24, 2026), https://perma.cc/LRE6-MNCF ...................................................6

## GLOSSARY OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| No.17-1129.Oral.Arg. | Oral Argument, *Free Press v. FCC*, No.17-1129 (D.C. Cir. 2018), https://perma.cc/FE5L-N6M8 |
| NOA | Notice of Appeal or, in the Alternative, Emergency Petition for Writ of Mandamus, Case No.26-1062 (filed Mar. 21, 2026) |
| NOA.App. | NOA Appendix |
| NXST.Opp. | Intervenor Nexstar Media Inc.'s Opposition to Motions for Stay and Injunction Pending Appeal Opposition to Emergency Motions for Stay, Case Nos. 26-1062 & 26-1065 (filed Mar. 26, 2026) |
| CAA | Consolidated Appropriations Act of 2004, Public Law No.108-199 |
| FCC | The Federal Communications Commission |
| FCC.Opp. | FCC's Opposition to Emergency Motions for Stay, Case Nos. 26-1062 & 26-1065 (filed Mar. 26, 2026) |
| Mot. | Emergency Motion for Stay and Injunction Pending Appeal, Case No.26-1062 (filed Mar. 21, 2026) |
| O'Rielly.Br. | Brief for Michael O'Rielly as Amicus Curiae in Support of Appellants/Petitioners, Case No.26-1062 (filed Mar. 23, 2026) |
| UHF | Ultra-high frequency |

## INTRODUCTION

FCC's position distills to this:  Instead of making momentous decisions with immediate real-world consequences at the Commission-level, FCC can abandon longstanding rules and force massive change, and do it all at the staff-level.  And because this Court may only review orders of the full Commission, FCC thinks it can stymie judicial review by sitting on the ensuing application for review, while Nexstar and Tegna rush their merger to completion based on the Bureau's immediately effective order.  Even if this Court ultimately determines the Commission's action to be entirely unlawful, by the time the full Commission rules (if ever) and this Court reviews, the merger will be too difficult to unwind.

The Court should not countenance this blatant gamesmanship and radical departure from the normal order.  FCC's opposition underscores what happens when "courts cannot check the Executive by applying the correct interpretation of the law." *Baldwin v. U.S.*, 589 U.S. 1231, 1233 (2020) (Thomas, J., dissenting from certiorari denial).  There is no end to what a Chair might inoculate from courts by launching major policy changes at the staff-level, sitting on the ensuing application for review, and delaying review until it is too late.  Nor will the problem be confined to FCC; if transformative policy changes with immediate real-world effect can be implemented at the staff-level without checks, then this playbook will spread to every agency with similar exhaustion requirements.

Even if the broadcast landscape is evolving, there is zero reason to think Congress intends radical policy shifts to emanate from the Commission, rather than Congress, let alone from the staff-level via a massive and statute/rule-defying merger, instead of the Commission itself via an orderly rulemaking where judicial review can precede extreme dislocation. No one denies the Bureau's order is having massive real-world effects or that given Nexstar's rush to close, delayed review will be substantially less effective and any ultimate remedy substantially more disruptive. This Court should reject this effort to frustrate review by converting an unlawful merger into a *fait accompli.*

## ARGUMENT

**I.    Appellants Are Likely To Succeed.**

**A.    The Court Has Jurisdiction.**

FCC barely contests jurisdiction, relegating its entire argument to a footnote. FCC.Opp.2.n.1; *Sierra Club v. FERC*, 145 F.4th 74, 84 n.10 (D.C. Cir. 2025). That is wise: Two of three current Commissioners have already described the order as "FCC act[ion]," NOA.16-17; *International Telecard v. FCC* says a Bureau order is not ripe for appeal under §402(b) only during "ongoing" review, 166 F.3d 387, 388 (D.C. Cir. 1999), NOA.25-26; and even if the Court lacks §402(b) jurisdiction, it would have mandamus jurisdiction "to preserve its prospective jurisdiction," NOA.27-28.

Nexstar tries to use §155(c)(7)'s second sentence (setting the deadline to appeal Bureau orders) to rewrite its first sentence (making *filing* "an application for review … a condition precedent to" appeal).  But "[i]f Congress had wanted" §155(c)(7) "to have that effect, it could have said so in words far simpler," *Biden v. Texas*, 597 U.S. 785, 798 (2022)—e.g., making "*resolution* of an application" the condition precedent.[1]  Regardless, even if Nexstar were right, that would only underscore the need for *mandamus* "jurisdiction" "to compel the [Commission] to" rule on Appellants' applications and stay the Bureau Order in the meantime.  *In re Nat'l Nurses United*, 47 F.4th 746, 753-56 (D.C. Cir. 2022).

A contrary result would skew the separation of powers by "stripp[ing] courts of judicial power" while "increasing the power of executive agencies."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 416 (2024) (Thomas, J., concurring).  Because the FCC Chair has complete discretion over whether and when to call a vote on an application, *see* 47 U.S.C. §155(a), if this Court has neither §402(b) nor mandamus jurisdiction, then there is no end to what policies might evade judicial review:  DEI mandates, equal-time violations, and more.  Applications can remain pending at FCC for many years.  So if *Humphrey's Executor* goes the way of Humphrey, then little

---

[1] Nexstar cites *Western Union v. FCC*, but that case held that a statute conferring jurisdiction over petitions filed "within 60 days after" "the entry of a final order" did not confer jurisdiction on petitions filed pre-entry.  773 F.2d 375, 377 (D.C. Cir. 1985) ("not decid[ing]" whether action was "ripe").

will limit the Chairperson's ability to direct massive policy change at the staff-level, sit on the ensuing application, and ice-out courts indefinitely. Nor will the problem be confined to FCC; a tool this powerful will not go unused by other alphabet-soup agencies.

### B. Waiving the National and Local Ownership Rules Was Unlawful.

1. According to FCC.Opp.14.n.5, Congress passed and President Bush signed a statute repeatedly referring to a "39 percent national audience reach limitation," but neither Congress nor President Bush intended the limitation to stay at "39 percent" going forward, and deferential APA standards were the only thing stopping the limit from being changed the very next day. *Cf.* NXST.Opp.17-18. That suggestion is wrong, as common-sense suggests and former Commissioner O'Rielly confirms, *see* O'Rielly.Br.7-11. Congress said 39%—and not the 45% FCC adopted via rulemaking—repeatedly for good reason: It was a "careful compromise entered into to 'settle' a 'contentious media ownership issue.'" O'Rielly.Br.21.[2]

FCC and Nexstar insist the 39% cap is merely a regulatory requirement FCC can suspend *sua sponte*, rather than a fixed statutory requirement, because the 1996 Telecommunications Act said "The Commission shall modify its rules for multiple

---

[2] That context casts especial doubt on FCC and Nexstar's attempt to infer significance from rejected legislative proposals, FCC.Opp.11-12, NXST.Opp.15-16, which would be "shoddy evidence of the public meaning of" §629(2) regardless. *Gamble v. U.S.*, 587 U.S. 678, 684 (2019).

ownership set forth in … 47 C.F.R. 73.3555 … by increasing the national audience reach limitation for television stations to 35[%].” Pub.L.104-104, §202(c), 110 Stat. 111. True, CAA §629(1) struck “35[%]” and inserted “39[%]” without altering the ‘96 Act’s “modify its rules” formulation. 118 Stat. 99. But §629(2) makes perfectly clear that Congress imposed a statutory requirement. Otherwise, §629(2)’s forbearance provision would be inexplicable; no wonder FCC and Nexstar strain to dismiss it as something between a nullity and a scrivener’s error, FCC.Opp.12-13, NXST.Opp.18.[3] And there would have been even less reason for §629(2)’s four separate cross-references to a “39 percent national audience reach limitation,” 118 Stat.99-100.

In the end, FCC retreats to policy, arguing Congress could not have intended to “permanently embed[] an ownership limit into statute” “given the ‘dynamic nature of the broadcast market.’” FCC.Opp.12. But FCC has no “license to countermand the ‘wisdom, fairness, or logic of legislative choices.’” *U.S. v. Skrmetti*, 605 U.S. 495, 530 (2025) (Thomas, J., concurring). Agencies—even so-called “expert” ones—cannot “sit as a super-legislature to weigh the wisdom of legislation,” any more than this Court can. *Id.* If FCC wants the ability to modify the national cap,

---

[3] Congress’ inclusion of a no-forbearance provision—because it was prescribing a statutory requirement—also explains why it did not include language “tak[ing] away the Commission’s authority to waive or modify its rules.” *Contra* FCC.Opp.11, NXST.Opp.16.

5

or to forebear its application in a particular case, it must take that argument to Congress.

2. Regardless, FCC's statutory-authority arguments underscore the problems with delegating this momentous decision to the Bureau. FCC claims it has retained "[un]assert[ed]" power to modify the national cap since 2004, *contra Biden v. Nebraska*, 600 U.S. 477, 519 (2023) (Barrett, J., concurring), but concedes it left the cap untouched for two decades, FCC.Opp.7.&.14.n.5. *But see Loper*, 603 U.S. at 394. And if anyone is to adopt new rules "in light of media marketplace developments," FCC.Opp.15, it should be the full Commission—not unaccountable staffers. *See Ted Cruz Criticizes FCC on Nexstar Merger, No Full Vote*, Newsmax (Mar. 24, 2026), https://perma.cc/LRE6-MNCF. All that makes it exceedingly unlawful for "the Bureau" to be the one "find[ing] that special circumstances justified" a first-of-its-kind "waiver to permit the proposed transaction" in circumstances where real-world consequences will long precede judicial review absent this Court's intervention, FCC.Opp.7, rather than the Commission doing so in its *nine-year-and-counting* rulemaking and defending that in the normal course. *Cf.* Oral.Arg.at.50:48-52:20, *Free Press v. FCC*, No.17-1129 (D.C. Cir. 2018), https://perma.cc/FE5L-N6M8.

Unlike Duopoly-Rule waivers—which are guided by a robust body of Commission precedent (albeit nothing like what happened here, *infra* pp.9-10)—

neither FCC nor Nexstar can identify a single prior instance when FCC purported to waive the 39% cap.  None exists:  FCC has *always* required divestitures, and *always* said that it lacks authority to "decline to enforce" the 39% cap.  31 FCC.Rcd. 10213, 10222 (2016).[4]  If FCC wants to change course, *contra* §I.B.1, it must at least acknowledge that history—which the Bureau never did (presumably because doing so would concede the novelty and deprive itself of authority).  And the full Commission must at least announce "an appropriate general standard" to avoid granting waivers "out of unbridled discretion or whim."  *WAIT Radio v. FCC*, 418 F.2d 1153, 1159 (D.C. Cir. 1969).  Without Commission precedent to guide the Bureau's exercise of its delegated authority, waiving the 39% cap is hardly "minor or routine or settled in nature."  47 C.F.R. §0.5(c).  Put differently, unless and until the Commission announces a waiver standard and grants one, the Bureau is powerless to do so.  If the Bureau thinks a waiver is justified, it must "refer[]" that policy question "to the Commission en banc."  *Id.* §0.283(c).

---

[4] In a footnote, FCC suggests that its 2016 position "is best read" to mean that FCC cannot forebear the cap, but that FCC nonetheless possesses "distinct waiver authority."  FCC.Opp.13.n.4, *accord* NXST.Opp.19.  Again, Congress' felt need to rule-out forbearance effectively defeats any suggestion of "distinct waiver authority."  *Supra* n.2.  And notwithstanding FCC's confusion about what its own order "appears to" have done, FCC.Opp.13.n.4, the 2016 order did *not* waive the 39% cap; it waived the elimination of the UHF-discount rule, FCC.Opp.3.n.3.

FCC never disputes the Bureau "entirely fail[ed] to consider" this concern about its delegated authority, *Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 344 (D.C. Cir. 2019), even though Appellants raised it below, NOA.App.351. Undaunted, FCC presses the "*post hoc* litigation rationalization," *contra Gulf Restoration Network v. Haaland*, 47 F.4th 795, 804 (D.C. Cir. 2022), that there was "nothing 'novel' about the Bureau's determination" because FCC suggested in 2016 that the 39% cap was a rule, and the default is that rules can be waived "for 'good cause' shown," FCC.Opp.10.   Like most *post hoc* rationalizations, that strains credulity.

For one, if FCC really decided in 2016 that the 39% cap was a mere rule, then its pending rulemaking on that exact question is unnecessary.  NOA.9-10.  And even assuming the 39% cap is a rule, *contra* O'Rielly.Br.22-23, it remains an unwavering rule never previously subject to deviation.  Its status as a rule would not obviate the need for the full Commission to articulate a standard to decide when a waiver is supported by "good cause"—as has occurred in the Duopoly-Rule context, *e.g.*, *Benedek License Corp.*, 13 FCC.Rcd. 18913 (1998), but not in the national-cap context.  With zero precedent to guide whether "good cause" supported "grant[ing] a waiver of the national cap rule," FCC.Opp.15-16, the Bureau was freelancing outside its delegated authority, in direct contravention to regulations requiring it to "refer[]" "[m]atters that present novel questions of law, fact or policy that cannot be

8

resolved under existing precedents" "to the [full] Commission." 47 C.F.R. §0.283(c).

FCC's description of the Bureau's decisionmaking proves the point. According to FCC.Opp.15-16, the Bureau "reasonably" "concluded that the combination provided by the transaction will … advance … localism-enhancing goals, and 'strict compliance' with the national cap therefore 'would be inconsistent with [its] purpose.'" But the national cap has never been about promoting localism at all costs. It has also been about preventing "concentration of control," *U.S. v. Storer Broad.*, 351 U.S. 192, 203-04 (1956), *cited at* FCC.Opp.3—and allowing a combination to attain 80% national audience reach seems well-nigh the opposite of that objective. Who decides how to reconcile localism with viewpoint (and economic) diversity when it comes to a waiver? If it is not Congress—i.e., if waiver is possible at all—it sure is not the Bureau unguided by Commission precedent. And about the worst context to unleash that first-of-its-kind waiver would be a massive merger in which the Bureau green-lights real-world, potentially irreversible consequences while foreclosing review. The alternative—developing a waiver standard through rulemaking where review precedes on-the-ground reordering—has everything to recommend it.

3. The same arguments apply to the blanket 21-market Duopoly-Rule waiver. Although at least some precedent tells the Bureau when waiving the Duopoly Rule

is appropriate, FCC identifies no precedent approaching this scale; before last Thursday, the largest number of waivers granted at once was 8, and that was by the full Commission (and most were temporary).  22 FCC.Rcd. 21196, 21208 (2007).  According to FCC.Opp.18, "the Bureau reasonably concluded" "special circumstances" justified "deviat[ing]" from the rule to the unprecedented tune of 250%.  But it is not the *Bureau*'s job to craft solutions responding to "special circumstances"—it is the Bureau's job to follow precedent asking whether the applicant "demonstrated why its case is significantly different from the many other station combinations across the country," *Benedek*, 13 FCC.Rcd. 18913, a burden no one contends Nexstar satisfied.

The reason the Chair allowed the Bureau to do what only the Commission can is not hard to discern:  the President ordered him to "GET THAT DEAL DONE!"  But nothing in unitary-executive theory eliminates the need to comply with the APA and proceed in a manner allowing judicial review to precede real-world impact.  The Bureau's waiver of the national and local ownership rules is *ultra vires*, arbitrary, and capricious.  It should not escape invalidation because it is presented as a *fait accompli.*

### C.      Granting the Applications Without a Hearing Was Unlawful.

In defending this lightning-fast approval—no information requests, no hearing—FCC repeats the Bureau's error, asserting that even though Appellants

established that the merger *prima facie* harmed the public interest, FCC nonetheless remained "free to consider the entire record" (including a commitment letter that did not become public until after the transaction closed), and make findings on any disputed "matter[] which it may officially notice" *before* "determining whether" a hearing is really necessary. FCC.Opp.19-21. Nonsense. Petitioners need not produce "clear, precise and indubitable" proof of a public-interest violation; they need only "show[] a good deal of smoke." *Citizens for Jazz v. FCC*, 775 F.2d 392, 397 (D.C. Cir. 1985) (Scalia, J.). Once Appellants did so, the whole point of requiring petitioners to come forward with a *prima facie* case is to shift the burden to FCC to explain why a hearing is not necessary. *See Astroline Comm'cns v. FCC*, 857 F.2d 1556, 1562 (D.C. Cir. 1988). That two-step inquiry appears nowhere here.

## II.    The Remaining Factors Support A Stay.

Nexstar and FCC take the Janus-faced position that there is no irreparable harm, but the merger is over and done. NXST.Opp.6-7; FCC.Opp.22. That merge-first-adjudicate-lawfulness-later approach runs headlong into Nexstar's own statements elsewhere, TRO.Opp.2, *California v. Nexstar*, No.2:26-cv-978 (E.D.Cal. 2026) (Dkt.73), as well as the reality that FCC is the one who will get to decide whether divestiture is inequitable, *e.g.*, *FCC v. Nat'l Citizens Comm. for Broad.*, 436 U.S. 775, 803-05 (1978). There is no need for another *Jarndyce v. Jarndyce*. *Cf.* No.17-1129.Oral.Arg.at.21:17-27. Nexstar's "plan[s]" for "rapid integration" are

11

unfolding *now*, Biard.Declaration.¶21, *California* (Dkt.73-8), with Appellants' right to review hanging in the balance.  This Court can and should enjoin them, consistent with the balance of the equities.  *FTC v. H.J. Heinz*, 246 F.3d 708, 726-27 (D.C. Cir. 2001) ("If the merger makes economic sense now," it will "later."); Mot.26 (contract countenanced closing in November 2026).

## CONCLUSION

The Court should grant relief.

Respectfully submitted,

s/Paul D. Clement

JONATHAN A. FRIEDMAN
MICHAEL D. HURWITZ
SAMUEL H. ECKLAND
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006

PAUL D. CLEMENT
JAMES Y. XI
KEVIN WYNOSKY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Appellants/Petitioners Broadband Communications Association of Pennsylvania; Broadband Communications Association of Washington; Indiana Cable and Broadband Association; Mississippi Internet and Television; Tennessee Cable & Broadband Association, and VCTA – Broadband Association of Virginia*

MARK I. BAILEN P.C.
BAILEN LAW
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
(202) 656-0422
mb@bailenlaw.com

*Counsel for Appellant/Petitioner Newsmax Media Inc.*

March 27, 2026

13

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and D.C. Circuit Rule 32(e) because it contains 2599 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(a)(1).

2. This brief complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and Federal Rule of Appellate Procedure 32(a)(6)'s typestyle requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

March 27, 2026

s/Paul D. Clement
Paul D. Clement

## CERTIFICATE OF SERVICE

I certify that, on March 27, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system.  I further certify that I served a true copy of the foregoing upon the Commission's general counsel by email to LitigationNotice@fcc.gov.

s/Paul D. Clement
Paul D. Clement