

FEDERAL COMMUNICATIONS COMMISSION
WASHINGTON, DC 20554

Brendan Carr
Chairman

April 13, 2026

The Honorable Maria Cantwell
Ranking Member
Committee on Commerce, Science, and Transportation
United States Senate
254 Russell Senate Office Building
Washington, DC 20510

**RE: Nexstar—Tegna Transaction Letter**

Dear Ranking Member Cantwell,

Thank you for your March 30, 2026, letter regarding the Nexstar-Tegna transaction. As you know, the parties announced their transaction on August 19, 2025. The parties then filed the transfer applications with the FCC following the partial government shutdown, which were officially accepted for filing by the agency on December 1, 2025. Following the close of the relevant pleading cycle, the FCC's Media Bureau announced its decision on March 19, 2026.

In your letter, you ask about the FCC's authority to have the Media Bureau issue the March 19 decision, rather than proceeding with an initial vote at the full Commission level. The Media Bureau, like other components of the FCC, has longstanding authority to waive FCC rules.[1] I believe that your letter focuses on two sets of regulations or rules in particular.

As to the national ownership regulation, the full Commission has previously addressed this rule on several occasions—including in votes under both Republican and Democratic agency leadership. In those full Commission votes, the full Commission made clear that the 39% rule is an FCC rule, rather than a statutory limit.[2] This full Commission precedent is consistent with a

---

[1] 47 CFR § 1.3 ("The FCC may waive its rules 'where particular facts would make strict compliance with a rule inconsistent with the public interest.'"); *see also WAIT Radio v. FCC*, 418 F.2d 1153, 1157 (D.C. Cir. 1969); *Northeast Cellular Telephone Co. v. FCC*, 897 F.2d 1164, 1166 (D.C. Cir. 1990) (citing *WAIT Radio*, 418 F.2d at 1159)); *NetworkIP, LLC v. FCC*, 548 F.3d 116, 127 (D.C. Cir. 2008); 47 CFR §§ 0.61, 0.283.

[2] *Amend. of Section 73.3555(e)*, MB Docket No. 13-236, Notice of Proposed Rulemaking, 28 FCC Rcd 14324, 14329, para. 13 (2013); *Amend. of Section 73.3555(e)*, MB Docket No. 13-236, Report and Order, 31 FCC Rcd 10213, 10223-10224, para. 21 (2016) ("We conclude that the Commission has the authority to modify the national audience reach cap . . . We find that no statute bars the Commission from revisiting the cap . . . in a rulemaking proceeding so long as such a review is conducted separately from a quadrennial review of the broadcast ownership rules pursuant to Section 202(h) of the 1996 Act. The CAA simply directed the Commission to revise its rules to reflect a 39 percent national audience reach cap and removed the requirement to review the national ownership cap from the Commission's quadrennial review requirement. It did not impose a statutory national audience reach cap or prohibit the Commission from evaluating the elements of this rule. Thus, the Commission retains authority under the Communications Act to review any aspect of the national audience reach cap."); *Amend. of Section 73.3555(e),*

prior D.C. Circuit decision.[3]  There, the court found that a previous FCC ownership limitation—which, like the current one, was expressed by Congress in statute as a percentage limitation—did not operate as a statutory cap, but instead as an agency rule that could be changed or modified by the agency.

Given that the full Commission has made clear that the national ownership cap is an FCC rule and not a statutory limit, the Media Bureau had the legal authority to waive that rule. Turning to the local ownership rule, this was not the first time that the Media Bureau waived that regulation.  Indeed, the Media Bureau recently approved a waiver of the local television ownership rule to allow Circle City Broadcasting to own three television stations in the Indianapolis market.[4]

Your letter also raises questions about the Media Bureau's decision given the size of this transaction.  The Nexstar-Tegna transaction was in line with (and in many cases substantially smaller than) others decided previously by the Media Bureau or other components of the FCC on delegated authority.  For instance, under Chairman Wheeler, on September 2, 2015, and May 3, 2016, respectively, the Wireline Competition Bureau approved the sale of assets from Verizon to Frontier,[5] a deal valued at $10.5 billion, and Altice's acquisition of Cablevision, a deal valued at $17.7 billion.[6]  In the broadcast space, under Chairman Pai, the Media Bureau approved the acquisition of Media General by Nexstar,[7] the acquisition of Cox by Terrier Media,[8] and the acquisition of Raycom Media by Gray, deals valued at $4.6 billion, $3.6 billion, and $3.1 billion, respectively.[9]  During President Biden's term in office, under Chairwoman Rosenworcel, no large broadcast deals were approved at all, either at the Commission level or on delegated authority.  However, the Media Bureau designated for hearing the applications for Standard

MB Docket No. 13-236, Order on Reconsideration, 32 FCC Rcd 3390, 3398, paras. 3-4, n. 60 (2017) ("[T]he parties fail to support their assertion that the Commission lacks authority to modify the cap, ignoring the Commission's prior analysis and conclusion that it has such authority, which remains undisturbed.").

[3] *See Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1043 (*Fox I*), *modified on reh'g*, 293 F.3d 537 (*Fox II*) (D.C. Cir. 2002) ("First, the choice of 35% rather than any other number determined only the starting point from which the Commission was to assess the need for further change.").

[4] *See Application for Consent to the Assignment of the Licensee of WRTV(TV), Indianapolis, Indiana, from Scripps Broadcasting Holdings LLC to CCB License, LLC*, Order, DA 26-207 (MB Feb. 27, 2026).

[5] *Applications Filed by Frontier Communications Corporation and Verizon Communications Inc. for the Partial Assignment or Transfer of Control of Certain Assets in California, Florida, and Texas*, WC Docket No. 15-44, 30 FCC Rcd 9812 (WC/IB/WTB 2015).

[6] *Applications to Transfer Control of Cablevision Systems Corporation to Altice N.V.*, WC Docket No. 15-257, Memorandum Opinion and Order, 31 FCC Rcd 4365 (WC/IB/MB/WTB 2016).

[7] *Consent to Transfer Control of License Subsidiaries of Media General, Inc., from Shareholders of Media General, Inc. to Nexstar Media Group, Inc. et al.*, MB Docket No. 16-57, Memorandum Opinion and Order, 32 FCC Rcd 183 (MB/WTB 2017).

[8] *Consent to Transfer Control of Certain License Subsidiaries of NBI Holdings, LLC to Terrier Media Buyer, Inc. et al.*, MB Docket No. 19-98 et al., Memorandum Opinion and Order, 34 FCC Rcd 10554 (MB 2019).

[9] *Consent to Transfer Control of Certain License Subsidiaries of Raycom Media, Inc. to Gray Television, Inc. et al.*, MB Docket No. 18-230, Memorandum Opinion and Order, 33 FCC Rcd 12349 (MB 2018).

General's proposed acquisition of TEGNA,[10] effectively killing a deal valued at $8.6 billion. More recently, under my Chairmanship, much larger deals, in terms of dollar value, were approved on delegated authority in the non-broadcast space, including Charter's acquisition of Cox,[11] a deal valued at $34.5 billion, and Verizon's acquisition of Frontier,[12] a deal valued at $20 billion.

On a going forward basis, my own view is that the FCC should operate consistent with the statute, agency rules, and FCC case law. That will continue to guide and constrain agency decisions—operating as a limiting principle. Your letter also asks about the use of delegated authority to block transactions. In my time as Chairman, the FCC has not blocked a large transaction without a Commission vote. This represents a departure from the agency precedent set during the Biden years.

Finally, in this particular case, as your letter notes, the Bureau-level decision is not a final action by the full Commission. Parties have appealed the Bureau decision to the full Commission by filing an application for review.[13] I would welcome the chance to work with you or your offices on any legislative ideas that you believe would aid the FCC's decision-making process.

Sincerely,

Brendan Carr
Chairman

---

[10] *Consent to Transfer Control of Certain Subsidiaries of TEGNA Inc. to SGCI Holdings III LLC et al.*, MB Docket No. 22-162, Hearing Designation Order, 38 FCC Rcd 1282 (MB 2023).

[11] *Cox Enterprises, Inc. and Charter Communications, Inc., Applications for Consent to Transfer Control*, WC Docket No. 25-233, Memorandum Opinion and Order, DA 26-211 (WCB/OIA/WTB Feb. 27, 2026).

[12] *Frontier Communications Parent, Inc. and Verizon Communications, Inc. Application for Consent to Transfer Control*, WC Docket No. 24-445, Memorandum Opinion and Order, 40 FCC Rcd 3156 (WCB/OIA/WTB 2025).

[13] Emergency Application for Review of the Broadband Communications Association of Pennsylvania et al., MB Docket No. 25-331 (filed Mar. 20, 2026).