# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

BROADBAND COMMUNICATIONS ASSOCIATION OF
PENNSYLVANIA, ET AL.,
*Appellants*,

v.

FEDERAL COMMUNICATIONS COMMISSION,
*Appellee*.

FREE PRESS, ET AL.,
*Appellants*,

v.

FEDERAL COMMUNICATIONS COMMISSION,
*Appellee*.

On Petitions for Mandamus and Appeals of an Order of the
Media Bureau of the Federal Communications Commission

## INTERVENOR NEXSTAR MEDIA INC.'S OPPOSITION TO
## APPELLANTS' EMERGENCY PETITIONS FOR MANDAMUS

Thomas M. Johnson, Jr.
Kathleen A. Kirby
Jeremy J. Broggi
Eve Klindera Reed
Boyd Garriott
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000
TMJohnson@wiley.law

May 11, 2026                    *Counsel for Nexstar Media Inc.*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Intervenor Nexstar Media Inc., through the undersigned counsel, certifies as follows:

**(A) Parties and *Amici***

All current parties, intervenors, and *amici* are listed in the certificate filed by Appellants in docket 26-1062. *See* Certificate as to Parties, Rulings, and Related Cases (Document #2169562) (filed Apr. 20, 2026).

**(B) Ruling Under Review**

The ruling under review is an order of the Federal Communications Commission's Media Bureau. *See Applications for Consent to the Transfer of Control of TEGNA Inc. to Nexstar Media Inc.*, Memorandum Opinion and Order, MB Docket No. 25-331, DA 26-267 (MB Mar. 19, 2026).

**(C) Related Cases**

This case has not previously come before this Court or any other, and counsel for Nexstar Media Inc. is not aware of any other related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

May 11, 2026

*/s/ Thomas M. Johnson, Jr.*
Thomas M. Johnson, Jr.

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Nexstar Media Inc. is a wholly-owned subsidiary of Nexstar Media Group, Inc.  Nexstar Media Group, Inc. is a publicly held company.  According to information contained in a Schedule 13G/A filed by BlackRock, Inc. (NYSE: BLK) with the Securities and Exchange Commission on April 3, 2025, BlackRock, Inc. owns approximately 10.5% of Nexstar Media Group, Inc.'s outstanding stock.  No other publicly held corporation owns 10% or more of Nexstar Media Group, Inc.

May 11, 2026                                */s/ Thomas M. Johnson, Jr.*
                                            Thomas M. Johnson, Jr.

**TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

RULE 26.1 CORPORATE DISCLOSURE STATEMENT.................................... ii

TABLE OF AUTHORITIES ..................................................................... iv

GLOSSARY...........................................................................................x

INTRODUCTION ................................................................................1

BACKGROUND ..................................................................................2

ARGUMENT .......................................................................................3

      I.      APPELLANTS ARE NOT ENTITLED TO MANDAMUS...............................3

           A.      Appellants Have Not Shown Egregious Delay..........................4

           B.      Adequate Alternative Relief Is Available. .................................6

      II.      APPELLANTS ARE NOT ENTITLED TO A STAY.....................................7

           A.      Appellants Have Not Shown Irreparable Harm. .........................7

           B.      Appellants Are Not Likely To Succeed On The Merits. ..........14

           C.      The Public Interest Strongly Disfavors A Stay.........................22

CONCLUSION ..................................................................................24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES[*]

**Page(s)**

**Cases**

*Al-Tamimi v. Adelson*,
 916 F.3d 1 (D.C. Cir. 2019)................................................................23

*American Hosp. Ass'n v. Burwell*,
 812 F.3d 183 (D.C. Cir. 2016).............................................................4

*Astroline Communications Co. v. FCC*,
 857 F.2d 1556 (D.C. Cir. 1988)..........................................................21

*AT&T Corp. v. Iowa Utilities Board*,
 525 U.S. 366 (1999)............................................................................16

*\*In re Barr Laboratories, Inc.*,
 930 F.2d 72 (D.C. Cir. 1991)...............................................................6

*Brotherhood of Locomotive Engineers & Trainmen v. STB*,
 457 F.3d 24 (D.C. Cir. 2006)..............................................................12

*Cheney v. United States District Court for the District of Columbia*,
 542 U.S. 367 (2004)..............................................................................3

*City of Arlington v. FCC*,
 569 U.S. 290 (2013)............................................................................16

*Coastal Bend Television Co. v. FCC*,
 231 F.2d 498 (D.C. Cir. 1956)......................................................22, 23

*FCC v. National Citizens Committee for Broadcasting*,
 436 U.S. 775 (1978)..............................................................................8

*\*FCC v. Prometheus Radio Project*,
 592 U.S. 414 (2021)...............................................................14, 16, 20

---

[*]  Authorities upon which we chiefly rely are marked with asterisks.

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024)......................................................................................11

*Federal Education Ass'n v. Trump*,
2025 WL 2738626 (D.C. Cir. Sep. 25, 2025)........................................7, 10, 11

*Fontem US, LLC v. FDA*,
2022 WL 2761393 (D.C. Cir. July 12, 2022) ......................................................12

*\*Fox Television Stations, Inc. v. FCC*,
280 F.3d 1027 (D.C. Cir. 2002)..............................................................14, 15

*\*Fox Television Stations, Inc. v. FCC*,
293 F.3d 537 (D.C. Cir. 2002).....................................................................14

*Free Press v. FCC*,
735 F. App'x 731 (July 25, 2018)..................................................................23

*FTC v. Dean Foods*,
384 U.S. 597 (1966)..............................................................................9, 10

*FTC v. H.J. Heinz Co.*,
246 F.3d 708 (D.C. Cir. 2001).......................................................................9

*Groff v. DeJoy*,
600 U.S. 447 (2023)................................................................................17

*Gulf Oil Corp. v. Copp Paving Co.*,
419 U.S. 186 (1974)................................................................................16

*Healthy Gulf v. DOI*,
152 F.4th 180 (D.C. Cir. 2025)....................................................................11

*Illinois v. Ferriero*,
60 F.4th 704 (D.C. Cir. 2023).......................................................................7

*\*KalshiEX LLC v. CFTC*,
119 F.4th 58 (D.C. Cir. 2024)...........................................................7, 8, 9, 11

*Keller Communications, Inc. v. FCC*,
130 F.3d 1073 (D.C. Cir. 1997)....................................................................20

*Lawton v. IRS*,
2026 WL 710031 (D.C. Cir. Mar. 5, 2026) ...........................................4

*Loma Linda-Inland Consortium for Healthcare Education v. NLRB*,
2023 WL 7294839 (D.C. Cir. May 25, 2023) ...................................12

*Make the Road New York v. Noem*,
2025 WL 3563313 (D.C. Cir. Nov. 22, 2025)...................................10

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
336 F.3d 1094 (D.C. Cir. 2003)...........................................................6

*Metropolitan Council of NAACP Branches v. FCC*,
46 F.3d 1154 (D.C. Cir. 1995)...............................................18, 19, 22

*\*Mexichem Specialty Resins, Inc. v. EPA*,
787 F.3d 544 (D.C. Cir. 2015)........................................................5, 11

*Miot v. Trump*,
2026 WL 659420 (D.C. Cir. Mar. 6, 2026) .....................................13

*In re Monroe Communications Corp.*,
840 F.2d 942 (D.C. Cir. 1988).............................................................5

*Murray Energy Corp. v. FERC*,
629 F.3d 231 (D.C. Cir. 2011).............................................................19

*Murthy v. Missouri*,
603 U.S. 43 (2024)................................................................................11

*NAB v. FCC*,
147 F.4th 978 (D.C. Cir. 2025)..........................................................20

*\*In re National Nurses United*,
47 F.4th 746 (D.C. Cir. 2022)..............................................................4

*National Treasury Employees Union v. Trump*,
2025 WL 1441563 (D.C. Cir. May 16, 2025) ....................... 11, 12, 13

*Neguse v. ICE*,
No. 26-5072 (D.C. Cir. May 8, 2026) .............................................10

*In re Nexstar-Tegna Merger Litigation*,
  2026 WL 1049295 (E.D. Cal. Apr. 17, 2026) .................................................7, 13

*Nken v. Holder*,
  556 U.S. 418 (2009) .........................................................................................13

*North Carolina v. Covington*,
  581 U.S. 486 (2017) .........................................................................................23

*NRC v. Texas*,
  605 U.S. 665 (2025) ...........................................................................................7

*In re NTE Connecticut, LLC*,
  26 F.4th 980 (D.C. Cir. 2022) .............................................................................7

\*Reynolds Metals Co. v. FERC*,
  777 F.2d 760 (D.C. Cir. 1985) .......................................................................7, 10

*Ruggiero v. FCC*,
  278 F.3d 1323 (D.C. Cir. 2002) ........................................................................16

*SAS Institute, Inc. v. Iancu*,
  584 U.S. 357 (2018) .........................................................................................16

*In re: SGCI Holdings III LLC*,
  No. 23-1084 (D.C. Cir. Apr. 21, 2023).................................................................5

*Shepherd v. ABC, Inc.*,
  62 F.3d 1469 (D.C. Cir. 1995).............................................................................22

*Stone v. FCC*,
  466 F.2d 316 (D.C. Cir. 1972).............................................................................21

\*In re Stone*,
  940 F.3d 1332 (D.C. Cir. 2019)........................................................................4, 7

*Sumecht NA, Inc. v. United States*,
  923 F.3d 1340 (Fed. Cir. 2019) .........................................................................13

*Talbott v. United States*,
  2025 WL 3533344 (D.C. Cir. Dec. 9, 2025) .........................................................8

*Telecommunications Research & Action Center v. FCC,
    750 F.2d 70 (D.C. Cir. 1984)............................................................1, 4, 5

Trump v. CASA, Inc.,
    606 U.S. 831 (2025)...................................................................22, 23

In re United Mine Workers of America International Union,
    190 F.3d 545 (D.C. Cir. 1999).............................................................5

United States v. Storer Broad. Co.,
    351 U.S. 192 (1955).....................................................................14, 22

Virgin Islands Housing Finance Authority v. FEMA,
    151 F.4th 409 (D.C. Cir. 2025).......................................................4, 9, 19

**Statutes**

15 U.S.C. § 26..........................................................................................7

28 U.S.C. § 1651.......................................................................................4

47 U.S.C. § 155...............................................................................17, 19, 22

47 U.S.C. § 160......................................................................................17

47 U.S.C. § 301.......................................................................................8

47 U.S.C. § 309......................................................................................21

47 U.S.C. § 310.......................................................................................8

47 U.S.C. § 325......................................................................................12

47 U.S.C. § 402....................................................................................8, 10

*Consolidated Appropriations Act of 2004, Pub. L. No. 108-199, 118
    Stat. 3 (2004)........................................................................8, 15

Radio Broadcasting Preservation Act of 2000, Pub. L. No. 106-553,
    114 Stat. 2762 (2000)...................................................................16

Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56
    (1996)..................................................................................14

**Legislative Materials**

Preservation of Localism, Program Diversity, and Competition in
Television Broadcast Service Act of 2003, H.R. 2052, S. 1046,
108th Cong. (May 9 & 13, 2003) ...................................................................15

**Regulatory Materials**

47 C.F.R. § 0.61 .....................................................................................................17

47 C.F.R. § 0.283 .............................................................................................18, 19

47 C.F.R. § 1.3 .......................................................................................................18

47 C.F.R. § 73.3555 .................................................................................................2

47 C.F.R. § 76.65 ...................................................................................................12

*Amendment of Section 73.3555(e) of the Commission's Rules*,
32 FCC Rcd 3390 (2017)...........................................................................14

*Comsearch & C3Spectra Request for Waiver*,
Order, 40 FCC Rcd 2886 (2025) ...............................................................18

*Delta Radio, Inc.*,
18 FCC Rcd. 16889 (2003).........................................................................19

*FM Translator Station K245DC*,
39 FCC Rcd. 5944 (2024).........................................................................19

Reorganization and Revision of Chapter, 28 Fed. Reg. 12,386 (Nov.
22, 1963) ...................................................................................................18

**Other Authorities**

Fed. R. App. P. 21 ................................................................................................4, 9

FCC Br., *Free Press v. FCC*,
735 F. App'x 731, No. 17-1129, 2017 WL 6507881 (Dec. 19,
2017) .........................................................................................................17

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| CAA | Consolidated Appropriations Act of 2004, Pub. L. No. 108-199, 118 Stat. 3 (2004) |
| FCC or Commission | Federal Communications Commission |
| NOA.App. | Industry Appellants' Notice of Appeal Appendix |

**INTRODUCTION**

Appellants seek mandamus to force the FCC to act on an application for review that, at filing, was barely 24 hours old and that targets a Media Bureau order that was itself barely 48 hours old.  The Court should deny that extraordinary request.  Appellants' entire mandamus theory is that they will be deprived of effective relief absent extraordinary judicial intervention.  But that theory is identical to their claim "of irreparable harm" that this Court already found inadequate.  Order at 2 (Document #2170860) (Apr. 28, 2026).  And Appellants do not so much as mention this Court's controlling mandamus test from *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984).  Forfeiture of the *TRAC* analysis aside, its factors weigh decisively against mandamus relief.  So too does the availability of alternative statutory relief.

The Court should also deny Appellants' stay requests embedded in their mandamus petitions.  As this Court already recognized, the preliminary injunction imposed by the Eastern District of California diminishes Appellants' alleged injuries.  The Court was right, and Appellants fail to satisfy any of the other stay requirements.

For these reasons, the Court should deny the petitions.

# BACKGROUND

In August 2025, Nexstar announced an agreement to acquire TEGNA for $6.2 billion. Nexstar and TEGNA filed applications seeking FCC approval. NOA.App.41-325. The applications sought waivers of the National Television Ownership Cap, 47 C.F.R. § 73.3555(e), and the Duopoly Rule, 47 C.F.R. § 73.3555(b), and offered extensive record evidence to justify those requests. NOA.App.61-158, 163-193. While those applications were pending, the Justice Department simultaneously performed its own seven-month review, in which Nexstar submitted more than two-million documents. *See* Transcript, https://tinyurl.com/bda79av3 (Mar. 4, 2026).

On March 19, 2026, the FCC's Media Bureau adopted the Order at issue here, the Justice Department unconditionally cleared the transaction, and the transaction closed. The Bureau held the transaction would generate strong public-interest benefits, including "expand[ing] the production of local news and information" and "promoting the FCC's longstanding media policy goals." NOA.App.1-2, 28-35. It recognized that existing Commission-level precedent supported waiver of the National Cap and the Duopoly Rule in these circumstances.

The Order conditioned its grant of the applications on compliance with commitments by Nexstar, including to (1) expand investment in local news and programming; (2) offer certain cable and satellite companies an extension of

retransmission consent agreements at existing rates until November 30, 2026; and (3) divest six televisions stations within two years, provided that a Duopoly Rule waiver remains necessary at that time. *See, e.g.*, NOA.App.3, 11-12, 19-20, 24, 28-33, 35.

Appellants initiated this action one day after asking the FCC to review the Bureau's order. They simultaneously filed "emergency" petitions for mandamus and motions for stay pending appeal. The Court denied the stay motions, finding that (1) Appellants were unlikely to establish the Court's jurisdiction, and (2) Appellants' "showing of irreparable harm appears to be diminished by the preliminary injunction entered by the United States District Court for the Eastern District of California." *See* Order at 1-2 (Document #2170860). The Court then ordered the FCC and Nexstar to respond to the petitions for mandamus. *Id.* at 2.

## ARGUMENT

### I. APPELLANTS ARE NOT ENTITLED TO MANDAMUS.

Mandamus "is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). Because Appellants "request[ ] a writ of mandamus against an agency under the All Writs Act," they must show (1) that "the writ would protect [the Court's] current or prospective jurisdiction," (2) that the FCC "has a crystal-clear legal duty to act," and

3

(3) that "the agency's delay" in acting "is so egregious as to warrant mandamus." *In re Nat'l Nurses United*, 47 F.4th 746, 752-53 (D.C. Cir. 2022).

To show agency delay is "egregious," Appellants must establish entitlement to relief under "the '*TRAC* factors.'" *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see TRAC*, 750 F.2d at 79-80 (enumerating factors); *Nat'l Nurses United*, 47 F.4th at 753. They must further satisfy three additional requirements to show that "mandamus is appropriate," including that "there is no other adequate remedy available."[1] *Nat'l Nurses United*, 47 F.4th at 752 n.4; *see Am. Hosp. Ass'n*, 812 F.3d at 189.

## A.    Appellants Have Not Shown Egregious Delay.

Appellants cannot show that the FCC unreasonably delayed acting on their application for review—completely omitting any discussion of the six *TRAC* factors. Because Appellants were required to show entitlement to relief in their petition, Fed. R. App. P. 21(a)(2)(B)(iii), (iv), that omission constitutes forfeiture of the right to address the *TRAC* factors, *Virgin Islands Hous. Fin. Auth. v. FEMA*, 151 F.4th 409, 419 (D.C. Cir. 2025); *accord, e.g.*, *Lawton v. IRS*, 2026 WL 710031, at *1 (D.C. Cir.

---

[1] In considering another All Writs Act petition, this Court held "these three threshold requirements are jurisdictional." *In re Stone*, 940 F.3d 1332, 1338 (D.C. Cir. 2019); *see* Mandamus Pet. at 5, *In re Stone*, 940 F.3d 1332 (D.C. Cir. 2019) (No. 19-3054) (Document #1800625) (seeking "[m]andamus under the All Writs Act, 28 U.S.C. § 1651"). Later it said, "[i]n All Writs Act cases, these three requirements" go to the merits. *Nat'l Nurses United*, 47 F.4th at 752 n.4. Either way, Appellants cannot prevail.

Mar. 5, 2026) (summary dismissal for failure to satisfy *TRAC* factors); Order, *In re: SGCI Holdings III LLC*, No. 23-1084 (D.C. Cir. Apr. 21, 2023) (Document #1995758) (similar).

Appellants' omission is an implicit concession that the *TRAC* factors weigh heavily against relief. Indeed, Appellants have established no "rule of reason," *TRAC*, 750 F.2d at 80, that requires the Commission to "act within twenty-four hours," Industry.NOA.23; *see In re Monroe Commc'ns Corp.*, 840 F.2d 942, 945-47 (D.C. Cir. 1988) ("years of administrative limbo" fell "short of egregious delay"). To the contrary, the absence of a "statutory timetable" for FCC action means that the "agency's control over the timetable … is entitled to considerable deference." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015). Further, Appellants' interests are overwhelmingly pecuniary, and it is indisputable that "delay would" not "put human health at risk." *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 552 (D.C. Cir. 1999).

Appellants' claim of "possible" deprivation of their review right, Special-Interest.NOA.15, Industry.NOA.27-28, does not change the outcome. Appellants have not shown that review of a final Commission order under Section 402(b) will be unavailable without interim relief. *See infra* II.A. And, at most, that argument goes to only one *TRAC* factor—"the nature and extent of the interests prejudiced by delay," *TRAC*, 750 F.2d at 80—and is not an excuse to ignore the rest, *see id.* at 80-

81 (not granting mandamus after years-long delay allowed "allegedly excessive" rates of return "to 'become for all practical purposes, the accepted' ones").

Finally, Appellants have not shown that granting them relief would amount to anything more than "a judicial order putting [them] at the head of the queue." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991). Indeed, there are applications for review pending with the FCC that cover weighty issues and which predate Appellants' application. *See, e.g.*, Autel Robotics Co., Ltd., Application for Review, WC Docket No. 18-89, at 1, 6, 16 (filed Jan. 21, 2026) (seeking review of ban on "all foreign-made [unmanned aircraft systems] and [their] critical components" that excluded "an entire industry" from the U.S.); Rural Wireless Ass'n, Inc., et al., Reply in Support of Application for Review, WT Docket No. 25-150, at 3 n.9 (seeking review of spectrum sale involving "over $1 billion") (filed Jan. 30, 2026). That is dispositive. Where mandamus "simply moves all others back one space and produces no net gain," mandamus shall not issue. *Barr Lab'ys*, 930 F.2d at 75; *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (explaining that "competing priorities" *TRAC* factor was deemed dispositive "even though all the other factors" favored relief).

## B. Adequate Alternative Relief Is Available.

Appellants also have other adequate avenues to obtain relief. As explained below, Appellants can appeal a final order of the Commission under Section 402(b)

of the Communications Act.  *See infra* II.A.  Further, another court has preliminarily enjoined Nexstar's integration with TEGNA under the Clayton Act.  *See In re Nexstar-Tegna Merger Litig.*, 2026 WL 1049295, at \*28-31 (E.D. Cal. Apr. 17, 2026); *see also* 15 U.S.C. § 26.  That these other "adequate avenue[s] of relief" exist is independently fatal to "the mandamus petition."  *In re Stone*, 940 F.3d at 1338-39 (dismissing on this ground alone); *Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023) ("mandamus [is] an option of last resort"); *see NRC v. Texas*, 605 U.S. 665, 682 (2025) ("alternative path to judicial review" precludes nonstatutory review).

## II.  APPELLANTS ARE NOT ENTITLED TO A STAY.

Appellants have not shown entitlement to interim relief under the traditional stay requirements.  *See In re NTE Connecticut, LLC*, 26 F.4th 980, 987 (D.C. Cir. 2022).

### A.  Appellants Have Not Shown Irreparable Harm.

"[F]ailure" to show "irreparable harm" is "fatal" to a stay request.  *KalshiEX LLC v. CFTC*, 119 F.4th 58, 63-64 (D.C. Cir. 2024); *e.g.*, *Fed. Educ. Ass'n v. Trump*, 2025 WL 2738626, at \*2 (D.C. Cir. Sep. 25, 2025) (denying on this ground "alone").

#### 1.  Appellants Have Shown Neither Irreparability Nor Injury.

It is blackletter law that the "mere possibility" of irreparable harm does not establish entitlement to a stay.  *Reynolds Metals Co. v. FERC*, 777 F.2d 760, 763 (D.C. Cir. 1985) (Scalia, J.).  Rather, a movant must submit "evidence

substantiating" such harms. *KalshiEx*, 119 F.4th at 65. Here, Appellants have shown neither irreparability nor even injury.

Irreparability. Appellants assert that their harms are irreparable because, if Nexstar and TEGNA are permitted to integrate, it might make the merger irreversible. Industry.NOA.27-28, Special-Interest.NOA.15. But that makes no sense. The Bureau's order transfers TEGNA's station licenses to Nexstar. NOA.App.9; *see* 47 U.S.C. § 310(d). Thus, if this Court "revers[es]" a final FCC decision on the merits, 47 U.S.C. § 402(h), the approval of the license transfers would be undone, and Nexstar could no longer operate the underlying stations, *see id.* § 301.

The Consolidated Appropriations Act of 2004 contemplates as much, providing an "entity that exceeds the" National Cap up to two years to "divest[ ]." CAA, Pub. L. No. 108-199, § 629(3), 118 Stat. 3, 99. And the Supreme Court has upheld an FCC order requiring divestiture of long-"[e]xisting combinations." *FCC v. Nat'l Citizens Comm. for Broad.*, 436 U.S. 775, 814 (1978). Indeed, here and in prior orders, Nexstar itself has been required to divest stations. NOA.App.24. "The possibility" of this "corrective relief … at a later date weighs heavily against a claim of irreparable harm." *Talbott v. United States*, 2025 WL 3533344, at *11 (D.C. Cir. Dec. 9, 2025) (alterations rejected).

Because there is a path to relief post-merger generally, Appellants were required to show that *this merger* makes adequate relief impossible. And they were required to provide "the facts necessary" to that showing in their petition, Fed. R. App. P. 21(a)(2)(B)(iii), (c), and to back them with "evidence," *KalshiEX*, 119 F.4th at 64; *accord Virgin Islands*, 151 F.4th at 419 (forfeiture). Yet Appellants offer *nothing*. They offer no reason why Nexstar would be permitted to forever violate the Communications Act; no reason why the CAA's divestiture remedy would not work; and no reason why the FCC could not issue a divestiture order.

Appellants' own caselaw confirms the glaring lack of evidence. Their primary case, *FTC v. Dean Foods*, 384 U.S. 597 (1966), is inapposite because it "d[id] not pass upon … whether a preliminary injunction should be issued." *Id.* at 612. But it did explain that, on remand, the FTC would have to make "*a showing* that an effective remedial order, once the merger was implemented, would … be *virtually impossible*." *Id.* at 605 (emphases added). Similarly, *FTC v. H.J. Heinz Co.*, 246 F.3d 708 (D.C. Cir. 2001), is inapposite because it applied a statutory standard that did not require a showing of "irreparable damage." *Id.* at 714. And even applying that watered-down standard, the court cited undisputed evidence that the merger in that case would result in a factory closure, making it "impossible as a practical matter to undo the transaction." *Id.* at 726. Unlike the FTC in those antitrust cases, Appellants have offered *zero* evidence or reasoning to show that a final merits

remedy in this case would be "impossible."[2]  To the contrary, they refer to allegedly

ineffective final relief as a mere "possibility."   Special-Interest.NOA.15; *see* Industry.Mot.1 ("difficult as a practical matter").

Such "vague and speculative assertions … are insufficient to carry the … weighty burden of showing irreparable injury." *Make the Rd. N. Y. v. Noem*, 2025 WL 3563313, at *32 (D.C. Cir. Nov. 22, 2025).  Thus, Appellants are not entitled to a stay.  *See, e.g.*, *Reynolds Metals*, 777 F.2d at 763 (denying stay where movants claimed only that final remedy would be "more difficult" but did not show it would "likely" be "impossible"); *Fed. Educ. Ass'n*, 2025 WL 2738626, at *3 (denying stay where movant did not "attempt to demonstrate [its purported injuries] could meet … standard" for irreparable injury, "and it is far from self-evident that they would"); Order at 9, *Neguse v. ICE*, No. 26-5072 (D.C. Cir. May 8, 2026) (Rao, J., concurring) ("'generalized worries,' without at least some substantiation, 'do not amount to irreparable harm'").

Injury.  Aside from irreparability, Appellants have not even shown injury. The Order does not itself regulate Appellants and so they allege "speculative" and

---

[2] Further, Appellants' cited cases maintained FTC flexibility to preserve "an effective and viable competitor" as part of special "functions Congress has given the [FTC] in the merger field." *Dean Foods*, 384 U.S. at 606 n.5.  Under Section 402, however, Appellants are not entitled to preserve a competitor.  They are entitled only to seek "revers[al]" of an FCC order and a "remand," 47 U.S.C. § 402(h), and this final relief will remain available to them.

"attenuated" "ripple effects." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024). Industry Appellants claim (at 21) that if the transaction proceeds, Nexstar will gain more leverage in retransmission consent negotiations; that Nexstar will try and use that leverage to increase fees; and that the cable industry will be forced to capitulate. Special-Interest Appellants rely (at 16) on similar chains of inferences—that the merger will lead to follow-on decisions that pass retransmission consent fees on to consumers, that reduce the quality of journalism, and that harm union members. "[T]hose harms are speculative because they would materialize only *after*" a series of contingencies that may not occur. *Nat'l Treasury Emps. Union v. Trump*, 2025 WL 1441563, at *1 (D.C. Cir. May 16, 2025) (emphasis in original); *see also KalshiEX*, 119 F.4th at 64-65. Further, the agency disagreed with those future hypothetical harms, NOA.App.30-33, and this Court "defer[s] to agency … fact finding," *Healthy Gulf v. DOI*, 152 F.4th 180, 191 (D.C. Cir. 2025). Because Appellants have not shown that injury is "certain," they are not entitled to preliminary relief. *Mexichem*, 787 F.3d at 555.[3]

Further, none of the Appellants' harms are "imminent" enough to justify emergency relief. *Fed. Educ. Ass'n*, 2025 WL 2738626, at *3. The Order forbids Nexstar from raising retransmission consent rates until December 2026, obviating

---

[3] These same deficiencies show that Appellants are not "'likely' to establish each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024).

Industry Petitioners' purported injuries.[4]  NOA.App.31-32.  And the Order compels Nexstar to increase "local programming hours for a minimum of two years from consummation," obviating Special-Interest Appellants' purported injuries.  NOA.App.32-33.  Indeed, Appellants' request for a weeks-long delay to adjudicate the availability of one of their claimed paths to relief, *see* Motion for Extension (Document #2172555) (filed May 8, 2026), shows that even they do not believe injury is imminent, *see Fontem US, LLC v. FDA*, 2022 WL 2761393, at *1 (D.C. Cir. July 12, 2022).

Appellants have also offered no specifics to show the kind of "*significant financial injury*" that could justify extraordinary relief.  *Nat'l Treasury Emps. Union*, 2025 WL 1441563, at *2 (emphasis added).  To the extent there might be such injury, retransmission consent complaints are reparable under a separate procedure.  *See* 47 U.S.C. § 325(b)(3)(C); 47 C.F.R. § 76.65.  In any event, a stay of the Order—without more—would not halt integration and so would not "redress" Appellants' purported irreparable harms.  *Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023); *see* Industry.NOA.27-31, Special-Interest.NOA.14-17 (requesting only stays).

---

[4]  Intervenor DIRECTV previously argued (at 21-22) that at some undefined date it would incur automatic rate increases under its existing contracts.  However, any purported injury from those rate increases is "entirely self-inflicted" because DIRECTV "agreed to that [provision] in its" retransmission consent agreement. *Bhd. of Locomotive Eng'rs & Trainmen v. STB*, 457 F.3d 24, 28-29 (D.C. Cir. 2006).

2.    <u>Alternatively, The California District Court Injunction Defeats Any Irreparable Harm.</u>

Even if Appellants once could have met their burden to show irreparable harm, they cannot show such injury now that another court has preliminarily enjoined any "further integration" of Nexstar and TEGNA. *See In re Nexstar-Tegna Merger Litig.*, 2026 WL 1049295, at \*28-31.

The reason is simple. Appellants must show irreparable harm "*absent a stay.*" *Nken v. Holder*, 556 U.S. 418, 434, (2009) (emphasis added). "Absent a stay" from this Court, Nexstar and TEGNA are already prohibited from further integration pursuant to a different injunction from a different court. Because Appellants' entire theory of irreparable harm stems from already-enjoined integration activities, they would incur no irreparable harm absent a stay from this Court.

Although Nexstar has filed a notice of appeal of the other injunction, it remains in effect. Accordingly, Appellants lack "a clear *and present* need for equitable relief." *Miot v. Trump*, 2026 WL 659420, at \*2 (D.C. Cir. Mar. 6, 2026) (emphasis added); *see also Nat'l Treasury Emps. Union*, 2025 WL 1441563, at \*1 n.3 (denying stay "absent *ongoing* irreparable harm" (emphasis added)); *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1346-47 (Fed. Cir. 2019) (finding no irreparable harm where injurious conduct was already "covered by [a separate] [i]njunction").

13

**B.** **Appellants Are Not Likely To Succeed On The Merits.[5]**

    1.    <u>The FCC Has Statutory Authority to Waive the National Cap.</u>

The FCC "possesses broad statutory authority to regulate broadcast media 'as public convenience, interest, or necessity requires.'" *FCC v. Prometheus Radio Project*, 592 U.S. 414, 418 (2021) (quoting 47 U.S.C. § 303). Accordingly, the FCC has long regulated permissible broadcaster reach. *See United States v. Storer Broad. Co.*, 351 U.S. 192, 203 (1955); *Amendment of Section 73.3555(e) of the Commission's Rules*, 32 FCC Rcd 3390, 3391, ¶¶ 3-4 (2017).

In 1996, Congress directed the Commission to "modify its rules … by increasing the national audience reach limitation for television stations to 35 percent." Telecommunications Act of 1996, Pub. L. No. 104-104, § 202(c)(1), 110 Stat. 56, 111. Congress's directive that the FCC "modify its rules" showed its "choice of 35% rather than any other number determined only the starting point from which the Commission was to assess the need for further change." *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1043 (D.C. Cir. 2002); *see Fox Television Stations, Inc. v. FCC*, 293 F.3d 537, 540 (D.C. Cir. 2002) ("Had the Congress wished to insulate" the cap from FCC review "it need only have enshrined the 35% cap in

---

[5] Nexstar addressed Appellants' now-denied stay motions in its March 26 opposition to those motions. Here, Nexstar addresses only the merits arguments Appellants press in their "emergency petitions for a writ of mandamus." Order at 2 (Document #2170860).

the statute itself"). A few years later, Congress amended the 1996 Act "by striking '35 percent' and inserting '39 percent.'" CAA § 629(1), 118 Stat. 99. The Bureau rightly concluded that "Congress left the National Cap embedded in the Commission's rules" and, therefore, subject to the FCC's "authority to waive any of its rules." NOA.App.16.

Appellants contend the Bureau erred because "[t]he 39% cap was set by Congress." Industry.NOA.17-18; Special-Interest.NOA.7. This Court rejected that precise argument under the 1996 Act. *Fox*, 280 F.3d at 1042-43. As the Bureau explained, "Congress's choice to direct the Commission to 'modify its rules' again in 2004 shows that it 'intended the phras[ing]' to preserve the FCC's authority." NOA.App.16-17 (quoting *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 233-34 (2020)). Appellants never address Congress's decision to keep the "modify its rules" language.

Indeed, Congress considered language in 2004 that would have set the Cap by statute. *See* Preservation of Localism, Program Diversity, and Competition in Television Broadcast Service Act of 2003, H.R. 2052, S. 1046, 108th Cong. §§ 2(a)(3), 3(a), 3(b)(3) (May 9 & 13, 2003). But Congress rejected it and chose instead to amend the 1996 Act and retain the instruction that the FCC "modify its rules." That "action strongly militates against a judgment that Congress intended a

result that it expressly declined to enact." *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 200-01 (1974).

When Congress wants the FCC to modify its rules and make no further changes, it says so expressly. In the Radio Broadcasting Preservation Act of 2000, Congress told the FCC to "modify [its] rules" about low-power FM-radio stations *and* that it "may not" modify those rules again unless "expressly authorized" by additional legislation. Pub. L. No. 106-553, § 632(a)(1)-(2), 114 Stat. 2762, 2762A-111; *see Ruggiero v. FCC*, 278 F.3d 1323, 1326 (D.C. Cir. 2002) (this "rescinds the Commission's discretion"), *vacated on other grounds*, 317 F.3d 239 (D.C. Cir. 2003) (en banc). Section 629 contains no similar prohibitory language. "Congress's choice to depart from the model of a closely related statute" cannot be "disregard[ed]." *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018).

Furthermore, the FCC adopted its media-ownership rules through its general rulemaking authority. *See Prometheus*, 592 U.S. at 418. And "[n]one of the statutory provisions" of the 1996 Act "displaces the Commission's general rulemaking authority." *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 385 (1999); *see City of Arlington v. FCC*, 569 U.S. 290, 293 (2013) (FCC's "rulemaking authority extends to the subsequently added portions of the Act"). Because the FCC retains its general authority over the National Cap, the agency may administer it outside the section 202(h) review process.

Industry Appellants' position (at 17-18) that the FCC has consistently interpreted the CAA as limiting its authority is incorrect. In reality, "the full Commission has previously determined that the agency has the authority to change or modify the current 39% National Television Ownership Rule." NOA.App.2. That, not Appellants' theory, has been the FCC's position for years. *See* FCC Br. at 35-40, *Free Press v. FCC*, 735 F. App'x 731 (2018) (No. 17-1129), 2017 WL 6507881 (recounting consistent FCC positions from 1998 to 2017).

Appellants invoke the CAA's forebearance provision. Industry.NOA.17-18. But this Court must "heed[ ] what [the] statute actually says." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). The forebearance provision cross-references 47 U.S.C. § 160, which by its terms applies only to "telecommunications carriers" and "telecommunications services," not broadcasters. Furthermore, as the Bureau explained, forbearance and waiver are distinct authorities and the Bureau relied only on waiver. NOA.App.17.

### 2. The Bureau Acted Within Its Delegated Authority

Appellants claim the Bureau lacked delegated authority. Industry.NOA.19-20; Special-Interest.NOA.9. But the FCC may "delegate any of its functions," 47 U.S.C. § 155(c)(1), and it has delegated the Bureau authority over "waiver requests," 47 C.F.R. § 0.61(h).

The Bureau did not violate 47 C.F.R. § 0.283(c)'s prohibition on deciding "novel questions of law, fact or policy that cannot be resolved under existing precedents and guidelines."  Under the regulation's plain text, Appellants must identify a question that is both (1) "novel," and (2) not resolvable "under existing precedents and guidelines."  Appellants show neither.

First, the waiver requests were not "novel."  On whether the Commission can waive the 39% cap, Industry.NOA.19; Special-Interest.NOA.9, "the full Commission has previously determined that the agency has the authority to change or modify the … 39% National [Cap]."  NOA.App.2, 16 & n.109 (quoting Commission orders).  And it is long settled that the agency can "waive[ ]" its television "ownership" rules. *Metro. Council of NAACP Branches v. FCC*, 46 F.3d 1154, 1157 (D.C. Cir. 1995).

The policy questions "of whether and when waiving the national-audience-reach limitation [is] in the public interest" or when "to waive the duopoly rule," Industry.NOA.19-20, are also not novel.  The Commission has for decades employed a "good cause" waiver standard. *See* 47 C.F.R. § 1.3; Reorganization and Revision of Chapter, 28 Fed. Reg. 12,386, 12,416 (Nov. 22, 1963); *accord Comsearch & C3Spectra Request for Waiver*, Order, 40 FCC Rcd 2886, ¶ 7 (2025). A cursory Westlaw search shows that the Commission and its bureaus have applied

this standard *thousands* of times—including to waive media-ownership rules. *See, e.g.*, *Metro. Council*, 46 F.3d at 1157.

Second, even if the waiver requests were novel (they were not), they were resolvable under "existing precedents and guidelines." 47 C.F.R. § 0.283(c).[6] The wealth of FCC decisionmaking on the National Cap, the Duopoly Rule, and the waiver standard more broadly gave the Bureau everything it needed to "decide [the] Waiver Request" even if "the Commission ha[d] not previously considered the exact arguments or circumstances [the applicant] presented." *FM Translator Station K245DC*, 39 FCC Rcd. 5944, ¶ 5 n.17 (2024); *see Delta Radio, Inc.*, 18 FCC Rcd. 16889, ¶ 6 (2003) (similar).

Finally, Appellants are unlikely to prevail on this issue because the FCC will "pass[] upon" their application for review. 47 U.S.C. § 155(c)(4). A favorable Commission ruling will moot Appellants' claimed injuries and, if the Commission "ratifie[s] the [Bureau's] Order," it will "resolve[] any potential delegation problems." *Murray Energy Corp. v. FERC*, 629 F.3d 231, 236 (D.C. Cir. 2011).

---

[6] Appellants discuss only novelty and thus "forfeit[ ]" the second half of the standard. *Virgin Islands*, 151 F.4th at 419.

19

3. <u>The Order Was Reasonable and Reasonably Explained</u>

The Order also satisfies the APA's arbitrary-and-capricious standard, which requires "that agency action be reasonable and reasonably explained." *Prometheus*, 592 U.S. at 423.

Special-Interest Appellants dispute (at 7-9) the Bureau's public-interest analysis. But the agency thoroughly explained the many benefits that will arise from waiving the National Cap to allow the merger, including "concrete public benefits with respect to localism." NOA.App.19-20. It also recognized "the dramatic changes that have taken place in the media marketplace" since the Cap was last updated, including "an explosion of distribution technologies and programming" affecting its analysis. NOA.App.2. The Bureau concluded waiver serves the public interest, and the Court should not second guess that "policy judgment." *NAB v. FCC*, 147 F.4th 978, 997 (D.C. Cir. 2025).

Industry Appellants (at 18-19) and Special-Interest Appellants (at 7-8) contend the Duopoly Rule waivers were too broad. But the Order evaluated specific showings made in Nexstar's application for each individual waiver and found that, in each relevant market, "at least one of the stations in the proposed combination is weak relative to the stronger stations in the market" and "common ownership of the stations would not harm competition." NOA.App.23-24. That satisfies the FCC's obligation to "explain why deviation better serves the public interest." *Keller*

20

*Commc'ns, Inc. v. FCC*, 130 F.3d 1073, 1076-77 (D.C. Cir. 1997). The Bureau also denied waivers in two markets and required six divestitures. NOA.App.23-24. Its careful market-by-market evaluation is hardly repeal through adjudication. *Contra* Industry.NOA.18-19.

Industry Appellants (at 20) and Special-Interest Appellants (at 9-10) argue the Bureau should have designated the matter for hearing. But a hearing is only required where there are "substantial and material questions of fact." 47 U.S.C. § 309(d)(2); *see Stone v. FCC*, 466 F.2d 316, 322-23 (D.C. Cir. 1972) ("the FCC is not required to hold a hearing where it finds … no substantial and material questions of fact to exist").

Here, "[w]hat the Commission found to be in dispute were not the facts, but rather the conclusions to be drawn." *Stone*, 466 F.2d at 328; *see* NOA.App.10, 14-15 & n.100, 30, 32.[7] Indeed, while Industry Appellants (at 20) and Special-Interest Appellants (at 10) make the conclusory assertion that they "presented several substantial and material questions of fact," they never actually identify any such questions. The Bureau was not required to "waste time" on an unnecessary hearing.

---

[7] Industry Appellants (at 20) and Special-Interest Appellants (at 9) argue the FCC must "assum[e] the facts set forth in a petition to deny are true." (citing *Astroline Communications Co. v. FCC*, 857 F.2d 1556 (D.C. Cir. 1988)). This only applies to the "threshold inquiry" of *prima facie* inconsistency with the public interest, *Astroline*, 857 F.2d at 1561, but the Commission may then assess "whether the totality of the evidence arouses a sufficient doubt on a point that further inquiry is called for." *Id.* at 1561-62.

*Storer Broad. Co.*, 351 U.S. at 205; *see Metro. Council*, 46 F.3d at 1160 ("FCC's discretion and expertise are 'paramount in this sphere'").

**C.  The Public Interest Strongly Disfavors A Stay.**

Identifying the public interest in broadcast policy is a "responsibility [that] must lie at the Commission's door." *Coastal Bend Television Co. v. FCC*, 231 F.2d 498, 500 (D.C. Cir. 1956).  Here, the Bureau issued a detailed order concluding that the public interest favored Nexstar's acquisition of TEGNA's station licenses. Congress expressly provided that such bureau orders have immediate "force and effect."  47 U.S.C. § 155(c)(3).  Staying the order would thus "intrude[ ] on [two] coordinate branch[es] of the Government" and impose "irreparable injury" on them and the "people" they represent. *Trump v. CASA, Inc.*, 606 U.S. 831, 859-61 (2025); *cf. Shepherd v. ABC, Inc.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995) ("because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion" (alterations accepted)).

The equities also disfavor a stay.  As explained, a stay would do nothing to help Appellants. *See supra* II.A.  But it would introduce uncertainty and potential conflict with the overlapping district-court injunction, thereby undermining "Nexstar's commitments to increase the amount and availability of local programming" and depriving "public interest benefits to viewers."  NOA.App.33-

35. The harm to Nexstar and the viewing public outweighs the illusory harms alleged by Appellants.

Remedial issues strongly disfavor a stay. Appellants ask for a "universal injunction … as an exercise of equitable authority." *CASA*, 606 U.S. at 841. However, Appellants cannot pursue "injunctive relief" beyond what is "necessary to provide complete relief" for themselves. *Id.* at 852 (alterations omitted). The burden was thus on Appellants to show—with evidence—the specific station acquisitions that injure them and propose a tailored stay that is "necessary," "fair," and "workable." *North Carolina v. Covington*, 581 U.S. 486, 488 (2017); *accord Free Press* 735 F. App'x at 732 (dismissing petition absent "evidence that any [challenger] is a viewer in an affected market"). By ignoring these equitable principles, Appellants have "le[ft] the court to do counsel's work." *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019). That militates decisively against a stay.

"For [this Court] to interfere with the Commission's decision, through the issuance of stays, requires a far stronger case that [Appellants] have made." *Coastal Bend Television*, 231 F.2d at 500-01.

# CONCLUSION

The Court should deny the petitions.

May 11, 2026

Respectfully Submitted,

*/s/ Thomas M. Johnson, Jr.*
Thomas M. Johnson, Jr.
Kathleen A. Kirby
Jeremy J. Broggi
Eve Klindera Reed
Boyd Garriott
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000
TMJohnson@wiley.law

*Counsel for Nexstar Media Inc.*

**CERTIFICATE OF COMPLIANCE**

This response complies with the Court's April 28, 2026 Order (Document #2170860) because it contains 5,194 words. This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

May 11, 2026

*/s/ Thomas M. Johnson, Jr.*
Thomas M. Johnson, Jr.

**CERTIFICATE OF SERVICE**

I certify that on May 11, 2026, I caused the foregoing to be served upon all counsel of record via the Clerk of Court's CM/ECF notification system.

May 11, 2026

*/s/ Thomas M. Johnson, Jr.*
Thomas M. Johnson, Jr.