**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 26-1062**

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————

BROADBAND COMMUNICATIONS ASSOCIATION OF PENNSYLVANIA; BROADBAND COMMUNICATIONS ASSOCIATION OF WASHINGTON; INDIANA CABLE AND BROADBAND ASSOCIATION; MISSISSIPPI INTERNET AND TELEVISION; TENNESSEE CABLE & BROADBAND ASSOCIATION; VCTA – BROADBAND ASSOCIATION OF VIRGINIA; and NEWSMAX MEDIA INC.,

*Appellants/Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION,

*Appellee/Respondent*.

—————————

On Notice of Appeal from/Petition for Writ of Mandamus to
the Federal Communications Commission
(MB Docket No. 25-331)

—————————

## APPELLANTS/PETITIONERS' REPLY IN SUPPORT OF
## EMERGENCY PETITION FOR WRIT OF MANDAMUS

—————————

JONATHAN A. FRIEDMAN
MICHAEL D. HURWITZ
SAMUEL H. ECKLAND
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006

PAUL D. CLEMENT
JAMES Y. XI
KEVIN WYNOSKY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Appellants/Petitioners Broadband Communications Association of Pennsylvania; Broadband Communications Association of Washington; Indiana Cable and Broadband Association; Mississippi Internet and Television; Tennessee Cable & Broadband Association; and VCTA – Broadband Association of Virginia*
*(Additional Counsel Listed on Inside Cover)*

May 18, 2026

MARK I. BAILEN P.C.
BAILEN LAW
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
(202) 656-0422
mb@bailenlaw.com

*Counsel for Appellant/Petitioner Newsmax Media Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................ii

GLOSSARY OF ABBREVIATIONS ...........................................................v

INTRODUCTION .................................................................................1

ARGUMENT ......................................................................................2

I.      The Court Should Order FCC To Act Forthwith .............................. 2

II.     Without Prompt Action On Petitioners' AFR, A Stay Is Necessary
        To Preserve Jurisdiction................................................................ 8

CONCLUSION ................................................................................. 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Encore v. Fontes*,
    152 F.4th 1097 (9th Cir. 2025)..................................................................................9

*Am. Hosp. Ass'n v. Burwell*,
    812 F.3d 183 (D.C. Cir. 2016) ...............................................................................3

*ATT v. FCC*,
    978 F.2d 727 (D.C. Cir. 1992) ...............................................................................1

*Batalla Vidal v. Nielsen*,
    279 F.Supp.3d 401 (E.D.N.Y. 2018)......................................................................9

*City of Boston v. FERC*,
    897 F.3d 241 (D.C. Cir. 2018) .............................................................................11

*FEA v. Trump*,
    2025 WL 2738626 (D.C. Cir. 2025) .......................................................................7

*Florida v. HHS*,
    19 F.4th 1271 (11th Cir. 2021)...............................................................................9

*FTC v. H.J. Heinz*,
    246 F.3d 708 (D.C. Cir. 2001) .............................................................................10

*Illinois v. Ferriero*,
    60 F.4th 704 (D.C. Cir. 2023) ................................................................................5

*In re Aiken Cnty.*,
    645 F.3d 428 (D.C. Cir. 2011)............................................................................3, 8

*In re Core Commc'ns*,
    531 F.3d 849 (D.C. Cir. 2008) ...........................................................................2, 8

*In re NTE Conn.*,
    26 F.4th 980 (D.C. Cir. 2022) ................................................................................8

*League of Women Voters v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ...............................................................................6, 11

ii

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024)..................................................................2, 8, 11

*Lovitky v. Trump*,
   949 F.3d 753 (D.C. Cir. 2020) ...............................................................4, 7

*Mayor v. Azar*,
   392 F.Supp.3d 602 (D. Md. 2019) ..............................................................9

*Mexichem Specialty Resins v. EPA*,
   787 F.3d 544 (D.C. Cir. 2015) ................................................................3

*Prometheus Radio v. FCC*,
   2003 WL 22052896 (3d Cir. 2003)...........................................................11

*Pub. Citizen v. NHTSA*,
   489 F.3d 1279 (D.C. Cir. 2007) .................................................. 8, 10

*Retirement Sys. v. J.P. Morgan*,
   386 F.3d 419 (2d Cir. 2004)...............................................................10

*Reynolds Metals v. FERC*,
   777 F.2d 760 (D.C. Cir. 1985) ..............................................................5

*RTNDA v. FCC*,
   229 F.3d 269 (D.C. Cir. 2000) ...............................................................8

*Sierra Club v. Gorsuch*,
   715 F.2d 653 (D.C. Cir. 1983) ...............................................................7

*TikTok v. Trump*,
   507 F.Supp.3d 92 (D.D.C. 2020) ...........................................................6

*TRAC v. FCC*,
   750 F.2d 70 (D.C. Cir. 1984) ...............................................................2

*United States v. Phila. Nat'l Bank*,
   374 U.S. 321 (1963)..............................................................................11

**Statutes**

47 U.S.C. §155(c)(4)................................................................................4

47 U.S.C. §155(c)(5)................................................................................3

iii

47 U.S.C. §402(b) ...............................................................................................5

## Regulation

47 C.F.R. §0.3(a)(4) .......................................................................................... 4

## Other Authorities

*9th Circuit Issues Briefing Schedule for Nexstar/Tegna Case*,
     Commc'ns Daily (Apr. 27, 2026), https://perma.cc/QH4A-BLAT .....................6

Cynthia Littleton, *FCC Chief Brendan Carr Vows to 'Constrain'*
     *the Power of National Networks and Reform 'Arcane Artificial*
     *Limits' on TV Station Ownership*, Variety (May 5, 2025),
     https://perma.cc/3YLG-UPQ9 .....................................................................4

Mediation Questionnaire, *DirecTV v. Nexstar*, No. 26-2490
     (9th Cir. Apr. 27, 2026) ........................................................................ 6

Oral.Arg., *Free Press v. FCC*, No.17-1129 (D.C. Cir. 2018),
     https://perma.cc/FE5L-N6M8...................................................................8

Order, *Anthropic v. DoW*, No. 26-1049 (D.C. Cir. Apr. 8, 2026) .............................7

Ed Whelan, *D.C. Circuit Probes FCC's Evasion of Judicial Review*,
     National Review (May 7, 2026), https://perma.cc/WWH4-MV2H .....................4

# GLOSSARY OF ABBREVIATIONS

| <u>Abbreviation</u> | <u>Definition</u> |
|---|---|
| AFR | Application for Review under 47 U.S.C. §155(c) |
| CPAC.Br. | Corrected Brief of the Conservative Political Action Coalition Foundation Center for Regulatory Freedom as *Amicus Curiae* in Support of Appellants/Petitioners, No. 26-1062 (Mar. 23, 2026) |
| DIRECTV.Stay.Br. | Response of Intervenor DIRECTV, LLC to Emergency Motion for Stay and Injunction Pending Appeal, No. 26-1062 (Mar. 21, 2026) |
| DIRECTV.Stay.Reply | DIRECTV, LLC's Reply to Responses of FCC and Nexstar Media Inc., No. 26-1062 (Mar. 27, 2026) |
| FCC | The Federal Communications Commission |
| FCC.Opp. | FCC's Opposition to Emergency Petitions for Writ of Mandamus, Nos. 26-1062 & 26-1065 (May 11, 2026) |
| Free.Press.Stay.Mot. | Emergency Motion to Stay, No. 26-1065 (Mar. 23, 2026) |
| Free.Press.Stay.Reply | Reply of Appellants-Petitioners Free Press et al. in Support of Emergency Motion to Stay, No. 26-1065 (Mar. 27, 2026) |
| NRB.Br. | Brief of National Religious Broadcasters as *Amicus Curiae* in Support of Appellants-Petitioners, No. 26-1062 (Mar. 26, 2026) |
| NXST.Opp. | Intervenor Nexstar Media Inc.'s Opposition to Emergency Petitions for Writ of Mandamus, Nos. 26-1062 & 26-1065 (May 11, 2026) |

v

O'Rielly.Br.         Brief for Michael O'Rielly as *Amicus Curiae* in Support of Appellants/Petitioners, No. 26-1062 (Mar. 21, 2026)

Pet.         Notice of Appeal or, in the Alternative, Emergency Petition for Writ of Mandamus, No. 26-1062 (Mar. 21, 2026)

Pet.App.         Pet. Appendix

Stay.Mot.         Emergency Motion for Stay and Injunction Pending Appeal, No. 26-1062 (Mar. 21, 2026)

Stay.Reply         Reply in Support of Emergency Motion for Stay and Injunction Pending Appeal, No. 26-1062 (Mar. 27, 2026)

PI         Preliminary injunction

Stay.Ord.         Order, *Broadband Comm'cns Ass'n v. FCC*, No. 26-1062 (Apr. 28, 2026)

ZOA.Br.         Brief for Zionist Organization of America as *Amicus Curiae* in Support of Appellants/Petitioners

**INTRODUCTION**

FCC's response confirms the need for prompt relief.  Petitioners brought this emergency petition precisely because FCC gave every indication that it was manipulating its control over the Media Bureau and the timing of a decision on Petitioners' AFR to effectively deny Petitioners their statutory right to judicial review by waiting until the Nexstar–TEGNA merger became impossible to unwind.  FCC now confirms that was the plan all along.  Emboldened by this panel's recognition of FCC's gatekeeping role, FCC now "represent[s]" that its top people are "active[ly]" working towards a full Commission decision "expect[ed]" (but not guaranteed) by *December*, FCC.Opp.12-13, though FCC concedes that the Eastern District of California PI (and TEGNA itself), might be long gone by then, FCC.Opp.8.  That is a formula for unchecked executive overreach—yet somehow not even half of it.

FCC claims not only that it gets to decide when and whether Petitioners can obtain review of a decision that the merger parties have taken to be a bright green light; FCC claims that this Court is *required* to "defer[]" to FCC's judgment on that score.  FCC.Opp.12.  Make no mistake, the entire administrative state—and future FCC Chairs—are watching this "administrative law shell game" with interest.  *ATT v. FCC*, 978 F.2d 727, 731-32 (D.C. Cir. 1992) (Silberman, J.).  If this Court tolerates the current FCC's attempt to "dictate the outcome of cases" (and shift the locus of

litigation to California) notwithstanding this Court's exclusive jurisdiction, the result will be to permanently "curb[] the judicial power afforded to courts" in ways reminiscent of the bad-old-days of *Chevron*:  This Court will be powerless to "check the Executive by applying the correct interpretation of the law" unless and until FCC allows it to.  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 414-16 (2024) (Thomas, J., concurring).

That is surely not what this panel had in mind when it directed FCC to "state when it expects to satisfy its nondiscretionary obligation to 'pass[] upon' the pending" AFR.  Stay.Ord.2.  "Having repeatedly, and mistakenly, put [its] faith in the Commission," this panel should "not do so again."  *In re Core Commc'ns*, 531 F.3d 849, 861-62 (D.C. Cir. 2008).  Instead, this panel should follow the remedial logic from *Core Communications* and direct FCC to act on the AFR within 14 days.  If FCC "complie[s]," *id.*, the Court should exercise appellate jurisdiction and set a briefing schedule facilitating orderly review by "fall of 2026," FCC.Opp.8.  If FCC does not comply, the Court should stay the Bureau Order pending appeal.

## ARGUMENT

### I.     The Court Should Order FCC To Act Forthwith.

A.  Nexstar likens this case to *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), and other cases where a regulated entity frustrated by an over-worked regulator invokes mandamus to enforce "a statutory right to timely decisionmaking,"

*Mexichem Specialty Resins v. EPA*, 787 F.3d 544, 554 (D.C. Cir. 2015). NXST.Opp.4-6; *accord* FCC.Opp.10-12. It is not. This case is about whether and when this Court should order mandamus to preserve its jurisdiction. The answer, per then-Chief Judge Sentelle (joined by then-Judge Kavanaugh): when an agency "transparent[ly] violat[es]" "a clear duty to act" in an effort "to insulate itself from judicial review." *In re Aiken Cnty.*, 645 F.3d 428, 436 (D.C. Cir. 2011) (emphasis omitted); *see Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 190 (D.C. Cir. 2016) ("[I]n situations where plaintiffs allege that agency delay is unreasonable despite the absence of a specific statutory deadline, the entire *TRAC* factor analysis may go to the threshold jurisdictional question: does the agency's delay violate a clear duty?") Here, the panel already concluded that FCC has a clear duty to pass upon Petitioners' AFR. Stay.Ord.2. But FCC has made equally clear that it is not even willing to self-impose an actual deadline, effectively daring this Court to order one.

The panel should not be impressed by FCC's professed "active consideration." FCC.Opp.12. FCC's briefs transparently endorse the Bureau's reasoning and reject the AFR's legal and factual arguments, *cf.* Pet.App.406-36, taking the position (*contra* fact) that there is nothing novel about a first-of-its-kind waiver of the 39% national cap. All that is left is FCC's "obligation" to formalize what is clear to all, Stay.Ord.2—especially the merger parties, who have moved forward toward consummation—which would be easy to do, *see* 47 U.S.C. §155(c)(5) (FCC "may"

"deny [AFRs] without specifying any reasons").  Scheduling a vote on the AFR rests entirely with Chairman Carr, *see* 47 U.S.C. §155(c)(4), 47 C.F.R. §0.3(a)(4), and he certainly does not need seven more months to make up his mind about helping Nexstar "GET THAT DEAL DONE!"  Pet.15-16; *see also, e.g.*, Cynthia Littleton, *FCC Chief Brendan Carr Vows to 'Constrain' the Power of National Networks and Reform 'Arcane Artificial Limits' on TV Station Ownership*, Variety (May 5, 2025), https://perma.cc/3YLG-UPQ9.  Nor is this a case where the Chairman has scheduled the AFR for a vote but another Commissioner asked for more time.  *Cf.* Pet.16-17 (quoting Commissioner Gomez' vigorous dissent).  The stark contrast between the extreme alacrity with which the Chairman directed the Media Bureau to act, *id.* at 15, and his languid pace now that it has done so—not only on Petitioners' AFR but also Petitioners' Commission-level stay request, which likewise hangs in limbo—all but confirms that these "hijinks" will continue unless this Court puts a stop to them. Ed Whelan, *D.C. Circuit Probes FCC's Evasion of Judicial Review*, National Review (May 7, 2026), https://perma.cc/WWH4-MV2H.

B.  FCC argues that the California litigation eclipses Petitioners' "clear and indisputable right" to a ruling on their AFR.  FCC.Opp.2; *accord* NXST.Opp.7.  That is wrong:  The statute determines whether Petitioners have a "clear right to relief" and whether FCC has a "clear duty to act," not anything else.  *Lovitky v. Trump*, 949 F.3d 753, 760 (D.C. Cir. 2020).  Here, 47 U.S.C. §155(c)(4) says that AFRs "*shall*

be passed upon by" FCC (emphasis added), which is presumably why this panel already noted that these first two mandamus factors are satisfied, Stay.Ord.2. And FCC does not seriously contest that the final mandamus factor—that Petitioners have no "adequate alternate" mechanism to force FCC to act—is satisfied too. *Illinois v. Ferriero*, 60 F.4th 704, 713 (D.C. Cir. 2023). FCC just says that Petitioners "no" longer "need" any such mechanism, because the California PI "ensures that Nexstar and TEGNA cannot consummate their merger anytime soon." FCC.Opp.10-11.[1] But that is an irreparable-harm argument, not a mandamus one—and it is wrong for a host of reasons.

First, it overlooks this Court's *exclusive* jurisdiction over appeals from FCC orders granting license-transfer applications. *See* 47 U.S.C. §402(b). Having the real action take place in California is an affront to this Court and the congressional scheme. The point is not that Petitioners have a right to judicial review by *a* court; it is that Petitioners have a right to review by *this* Court. Nor is the point that Petitioners have a right to have some court review the merger; they have a right to review *of the FCC order*, which is not (and cannot) be at issue in that separate

---

[1] Nexstar does contest this factor, arguing that "Appellants can appeal a final order" "under" §402(b). NXST.Opp.6-7. But the *raison d'être* for this mandamus request is that Appellants *cannot* appeal until FCC schedules and holds a vote on their AFR, which they have no felt compunction to do. Stay.Ord.1-2; *cf. Reynolds Metals v. FERC*, 777 F.2d 760, 762 (D.C. Cir. 1985) (Scalia, J.).

litigation.  Indeed, Petitioners are not parties to the California litigation—and neither is FCC.  Even if the Ninth Circuit affirms the district court's hold-separate order, the Media Bureau order will remain on the books, and will give the Media Bureau cover to continue granting illegal waivers from the 39% cap at the Chairman's direction.

Second, even assuming that irreparable harm is relevant to the mandamus inquiry, FCC's argument fails as a matter of law.  Petitioners need not wait for "Damocles's sword … to actually fall" to demonstrate irreparable harm, *League of Women Voters v. Newby*, 838 F.3d 1, 8-9 (D.C. Cir. 2016), which is why courts in this jurisdiction "'routinely grant follow-on injunctions against the Government,' even when 'an … injunction'" in a different case "has already provided" the petitioners "with their desired relief," *TikTok v. Trump*, 507 F.Supp.3d 92, 114 (D.D.C. 2020).

That is especially true here, where Nexstar seems poised to ask the Ninth Circuit for expedition or immediate relief, perhaps as soon as it sees how this Court rules on mandamus.  *E.g.*, *9th Circuit Issues Briefing Schedule for Nexstar/Tegna Case*, Commc'ns Daily (Apr. 27, 2026), https://perma.cc/QH4A-BLAT (reporting expectation that Nexstar will "file a request for the 9th Circuit to move quickly to block the lower court injunction"); *see also* Mediation Questionnaire, *DirecTV v. Nexstar*, No. 26-2490 (9th Cir. Apr. 27, 2026), Dkt.22.1 ("Nexstar seeks to have this appeal heard expeditiously.").  Or the parties in the California litigation could reach

6

a settlement to avoid content blackouts.  And even absent either possibility, FCC itself expects the Ninth Circuit's decision by "fall of 2026."  FCC.Opp.8.  So if this Court forgoes mandamus in lieu of FCC's "expect[ed]" end-of-year timeframe for a decision on the AFR, FCC.Opp.13, things can only get worse:  FCC will still be icing-out this Court when (a) the case settles without Petitioners' voice or (b) the Ninth Circuit decision comes down, even if that settlement or decision gets rid of the only thing stopping what little integration remains before TEGNA disappears into Nexstar forever.

Logic does not support requiring Petitioners (or this Court) to scramble in the wake of a settlement or Ninth Circuit ruling.  The law does not require it either.  Petitioners have invoked this Court's mandamus jurisdiction now, *see Lovitky*, 949 F.3d at 759, and the far better course would be for this Court to direct FCC to act now, which would facilitate an orderly briefing schedule teeing up a decision on Petitioners' appeal by fall.  *E.g.*, Order, *Anthropic v. DoW*, No. 26-1049 (D.C. Cir. Apr. 8, 2026); *cf. FEA v. Trump*, 2025 WL 2738626, at *14 (D.C. Cir. 2025) (Henderson, J., dissenting).

What this Court should emphatically reject is FCC's request for blind "deference in establishing a timetable for completing its proceedings."  FCC.Opp.11.  No decision endorses that result.  *Cf. Sierra Club v. Gorsuch*, 715 F.2d 653, 658-59 (D.C. Cir. 1983) (*contra* FCC.Opp.10, counseling "vigorous[]" "review" of whether

"an agency is preventing review of a decision" "by indefinitely insisting that final action has been deferred"). Quite the opposite, this Court "will not permit an[y] agency"—let alone FCC—"to insulate itself from judicial review by refusing to act." *Aiken*, 645 F.3d at 436; *Core Commc'ns*, 531 F.3d at 861; *RTNDA v. FCC*, 229 F.3d 269, 272 (D.C. Cir. 2000) ("The court has afforded repeated opportunities for [FCC] to take final action."). On the heels of the Supreme Court slashing one obstacle "prevent[ing] the Judiciary from serving as a constitutional check on the Executive," *Loper*, 603 U.S. at 414 (Thomas, J., concurring), now is not the time to erect another.[2]

## II. Without Prompt Action On Petitioners' AFR, A Stay Is Necessary To Preserve Jurisdiction.

A. If FCC does not act on Petitioners' AFR on a timeframe facilitating a decision by fall, the Court should stay the Media Bureau's order "in order to preserve its prospective jurisdiction." *In re NTE Conn.*, 26 F.4th 980, 987 (D.C. Cir. 2022); *Pub. Citizen v. NHTSA*, 489 F.3d 1279, 1288 (D.C. Cir. 2007) (Kavanaugh, J.) (All-

---

[2] FCC also suggests that this Court should voluntarily take a backseat to FCC's rulemaking "examining whether the national television audience reach cap" "should be modified or eliminated." FCC.Opp.13. The last time this Court asked FCC about its "expected timing" for an order resolving that question was eight years ago. Oral.Arg.at.21:17-27.&.50:48-52:20, *Free Press v. FCC*, No.17-1129 (D.C. Cir. 2018), https://perma.cc/FE5L-N6M8. Even if that rulemaking ends soon, and even if it ends in an (erroneous) determination that FCC can modify/eliminate the 39% cap, Pet.17-18, it would neither moot this case nor rehabilitate the Bureau's *ultra vires* waiver, Pet.19-20.

Writs-Act relief appropriate "when agency conduct could plausibly make later merits review impossible"). Whatever concerns the panel had about its appellate jurisdiction, Stay.Ord.1-2, it plainly has mandamus jurisdiction, *supra* I.B. And all of Petitioners' merits arguments apply with equal force: FCC's lack of authority to waive the statutory 39% cap; the Bureau's lack of delegated authority to grant a first-of-a-kind waiver or to "general[ly]" suspend the Duopoly Rule; and the Bureau's requirement to hold a hearing under *Astroline*. *See* Stay.Mot.15-24; Stay.Reply.4-11; *accord* O'Rielly.Br.12-24.

B. The panel has directed Petitioners to address how the California PI "prohibiting 'further integration' of Nexstar and TEGNA" "impact[s]" Petitioners' "ability to demonstrate irreparable harm." Stay.Ord.2. As explained *supra* p.6, "courts frequently" grant "overlapping" equitable relief "on the same subject matter," *Am. Encore v. Fontes*, 152 F.4th 1097, 1121 (9th Cir. 2025); *e.g.*, *Florida v. HHS*, 19 F.4th 1271, 1284 (11th Cir. 2021), especially when, as here, the other relief is being "vigorously contest[ed] on appeal" in a different jurisdiction, *Batalla Vidal v. Nielsen*, 279 F.Supp.3d 401, 435 (E.D.N.Y. 2018), and Petitioners are "not a party to the other case[]," *Mayor v. Azar*, 392 F.Supp.3d 602, 618-19 (D. Md. 2019). *Contra* NXST.Opp.22, neither "uncertainty" nor "potential conflict" will result; because FCC is not a party to the California litigation and the Bureau order is not at issue, there is no "risk of inconsistent injunctions." *Retirement Sys. v. J.P. Morgan*,

386 F.3d 419, 430 (2d Cir. 2004) ("simultaneous litigation" is "familiar feature of our federal system"). Unless FCC acts on the AFR on a timeframe facilitating judicial review by fall, it is far more than "plausibl[e]," *Pub. Citizen*, 489 F.3d at 1288, that one way or another the PI will be gone, that TEGNA will disappear, and that—as this panel implicitly recognized—Petitioners will be irreparably harmed, Stay.Ord.2, before this Court even has an opportunity to rule.

Nexstar contends otherwise, suggesting Petitioners retain "a path to relief post-merger" because "FCC could" "issue a divestiture order." NXST.Opp.8-9. But requiring divestiture months (or years) down the road will not enable Petitioners' members to recover the increased retransmission-consent fees in the interim,[3] nor ameliorate the loss-of-goodwill precipitated by higher consumer prices. Pet.App.463-92, DIRECTV.Stay.Br.20-23, DIRECTV.Stay.Reply.8-12. Nor will it resurrect the layoffs, budget cuts, shuttered facilities, and other harms to local/independent broadcasting, Pet.App.463-92, Free.Press.Stay.Mot.21-22, Free.Press.Stay.Reply.9-11, CPAC.Br.11-14, NRB.Br.4-11, ZOA.Br.2-3—which explains why *FTC v. H.J. Heinz*, 246 F.3d 708 (D.C. Cir. 2001), remains squarely on point, *contra* NXST.Opp.9. And most obviously, an order prompting Nexstar to sell former-TEGNA stations to some other competitor will only ossify the competitive

---

[3] *Contra* NXST.Opp.12, neither statute nor regulation allows Petitioners' members to recoup these costs.

10

harm occasioned by "the complete disappearance" of the third-largest television-station conglomerate. *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 336 n.13 (1963). Tacitly conceding these harms, Nexstar quickly pivots to arguing that a stay would not prevent them. NXST.Opp.12. Wrong again: Staying the required regulatory approval for the merger would plainly halt the harms the merger would cause. *City of Boston v. FERC*, 897 F.3d 241, 250 (D.C. Cir. 2018).

C. That leaves the combined public-interest/balance-of-equity factor, which only Nexstar contests. True, FCC has broad authority to set policy in "the public interest." NXST.Opp.22. But when, as here, FCC flouts statutory limits on that authority and acts arbitrarily-and-capriciously, the public interest "substantial[ly]" favors relief. *Newby*, 838 F.3d at 12; *e.g.*, *Prometheus Radio v. FCC*, 2003 WL 22052896, at *1 (3d Cir. 2003). And when FCC tries to insulate that action from the "structural constraint[]" of judicial review, the public interest demands it. *Loper*, 603 U.S. at 416 (Thomas, J., concurring).

11

## CONCLUSION

The Court should grant relief.

Respectfully submitted,

s/Paul D. Clement

JONATHAN A. FRIEDMAN
MICHAEL D. HURWITZ
SAMUEL H. ECKLAND
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006

PAUL D. CLEMENT
JAMES Y. XI
KEVIN WYNOSKY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Appellants/Petitioners Broadband Communications Association of Pennsylvania; Broadband Communications Association of Washington; Indiana Cable and Broadband Association; Mississippi Internet and Television; Tennessee Cable & Broadband Association, and VCTA – Broadband Association of Virginia*

MARK I. BAILEN P.C.
BAILEN LAW
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
(202) 656-0422
mb@bailenlaw.com

*Counsel for Appellant/Petitioner Newsmax Media Inc.*

May 18, 2026

12

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and D.C. Circuit Rule 32(e) because it contains 2,596 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(a)(1).

2. This brief complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and Federal Rule of Appellate Procedure 32(a)(6)'s typestyle requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

May 18, 2026

s/Paul D. Clement
Paul D. Clement

**CERTIFICATE OF SERVICE**

I certify that, on May 18, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system.

s/Paul D. Clement
Paul D. Clement
