# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

BROADBAND COMMUNICATIONS ASSOCIATION OF PENNSYLVANIA, ET AL.,

*Appellants-Petitioners,*

v.

FEDERAL COMMUNICATIONS COMMISSION,

*Appellee-Respondent.*

FREE PRESS, ET AL.,

*Appellants-Petitioners,*

v.

FEDERAL COMMUNICATIONS COMMISSION,

*Appellee-Respondent.*

On Appeal from
an Order of the Federal Communications Commission,
MB Docket No. 25-331

# PUBLIC INTEREST APPELLANTS' REPLY IN SUPPORT OF
# EMERGENCY PETITION FOR WRIT OF MANDAMUS

Gigi B. Sohn
G Squared Strategies
3503 Alton Place, NW
Washington, DC 20008

Paul R.Q. Wolfson
Kali Schellenberg
Bradley Girard
Andrew Bookbinder
Simon C. Brewer
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

*Counsel for Appellants-Petitioners in No. 26-1065*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................... ii

GLOSSARY OF ABBREVIATIONS................................................................... iii

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 2

CONCLUSION .................................................................................................... 8

CERTIFICATE OF COMPLIANCE ....................................................................

CERTIFICATE OF SERVICE .............................................................................

# TABLE OF AUTHORITIES

Page(s)

## CASES

*All. for Retired Am. v. Bessent,*
        770 F. Supp. 3d 79 (D.D.C. 2025) ......................................................... 4

*In re Core Commc'ns, Inc.,*
        531 F.3d 849 (D.C. Cir. 2008) ............................................................. 7

*In re: Nexstar-TEGNA Merger Litig.,*
        2026 WL 1049295 (2026) .......................................................... 4, 5, 7

*League of Women Voters of U.S. v. Newby,*
        838 F.3d 1 (D.C. Cir. 2016) ................................................................. 2

*In re People's Mojahedin Org. of Iran,*
        680 F.3d 832 (D.C. Cir. 2012) ............................................................. 3

## STATUTES

5 U.S.C. § 704 ............................................................................................. 3

28 U.S.C. § 1651 ........................................................................................ 4

47 U.S.C. § 155(c)(4) ........................................................................ 1, 2, 4

## OTHER AUTHORITIES

Emergency Pet. for Stay & Inj., Dkt. No. 25-331 (FCC, Mar. 20, 2026),
        https://www.fcc.gov/ecfs/document/103201544203305/1 ..................... 4

FCC, *Nexstar-Tegna,* https://perma.cc/74BZ-9VEG ................................ 3

# GLOSSARY OF ABBREVIATIONS

| <u>Abbreviation</u> | <u>Definition</u> |
| --- | --- |
| App. | Appendix |
| FCC | Federal Communications Commission |

# INTRODUCTION

The Federal Communications Commission has taken a series of unprecedented actions designed to frustrate this Court's review. The Commission insists that its order approving the largest broadcast merger in history is unreviewable by this Court because the order was nominally entered by the Media Bureau. And despite the full Commission's nondiscretionary duty to "pass[] upon" the application for review of the order, 47 U.S.C. § 155(c)(4), it refuses to commit to doing so in a meaningful time.

Meanwhile, within 15 minutes of the Bureau's unprecedented order, Nexstar publicly announced that the deal was completed. Now, Nexstar insists that this Court cannot act because another court has preliminary enjoined the merger—an injunction that Nexstar is actively appealing. And if that appeal is successful, according to Nexstar and the FCC, it will likely be months, if not longer, before this Court can even begin to consider the legality of a merger that Nexstar has shown it will aggressively implement. But the FCC's and Nexstar's gambits cannot insulate this merger—which would far exceed the limits that Congress imposed—from judicial review. Mandamus is appropriate to protect this Court's jurisdiction and to ensure that the parties receive the opportunity for judicial review guaranteed by statute.

# ARGUMENT

For the reasons we have previously set forth, Stay Mot. 11-20; Reply 4-9, as well as those stated in the Industry Appellants' concurrent filings, the order approving the transfer of TEGNA's licenses to Nexstar is plainly unlawful. Instead of repeating those arguments here, we incorporate them by reference. We raise three additional points.

**A.** Because the merger transgresses unequivocal statutory restrictions, the FCC is obligated to deny the license transfers and, at a minimum, to stay the Media Bureau's order allowing those transfers pending its action on the pending applications for review. *Cf. League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). But the Commission has neither denied the transfer nor stayed the order. Instead, the Commission has publicly celebrated the transfer. *See* App.671 ("*Agency Approval of Nexstar - TEGNA TV Station Deal . . . Promotes FCC's Media Policy Goals of Localism, Diversity, and Competition*"). And it has sat on the stay motion—refusing to act, thereby allowing the unlawful order approving the license transfers to remain in effect.

In its order denying a stay pending appeal, this Court directed the FCC to "state when it expects to satisfy its nondiscretionary obligation to 'pass[] upon' the pending application for review of the Media Bureau Order." Order (Apr. 28, 2026) (quoting 47 U.S.C. § 155(c)(4)). In its response, the FCC estimates (at 13)—with no

explanation—that "the Commission expects that it will be able to act on the application for review this year." And yet, when the Commission wanted to get the merger approved, *see* Brendan Carr (@BrendanCarrFCC), X, *Let's get [the Nexstar-TEGNA merger] done . . . .* (Feb. 7, 2026, at 2:20 ET), https://perma.cc/DD74-YZL2, the Media Bureau completed its review in record time—just 108 days.[1] The Commission provides no justification for why its review might need twice that time.

The Commission's dawdling strongly suggests a desire to keep Appellants "stuck in administrative limbo." *In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 837 (D.C. Cir. 2012). By prolonging the Commission's review, the FCC denies Appellants either "a favorable ruling" or "the opportunity to challenge an unfavorable one." *Id.* All the while, the Media Bureau's putatively unreviewable order remains in place and Nexstar and TEGNA treat it as final.

If the Commission wishes to postpone judicial review pending its own review of the Media Bureau's order, the proper and orderly process would be to stay the order. *Cf.* 5 U.S.C. § 704 (providing that when an agency wishes to postpone judicial review of a subordinate's action, the action must be "inoperative" pending review by superior agency authority). But here, the agency has refused to act even on

---

[1] FCC, Nexstar-Tegna, https://perma.cc/74BZ-9VEG

Appellants' emergency petition for a stay of the Media Bureau's order for months.[2] And the FCC's response to the mandamus petition in this Court offers no assurances about if or when the agency will act on that petition. Given the circumstances of this case, the FCC must either swiftly "pass[] upon" the order or, at a minimum, grant the petition for a stay pending completion of its review. 47 U.S.C. § 155(c)(4). And this Court has authority under the All Writs Act, 28 U.S.C. § 1651, to order the Commission to take such action.

Nexstar suggests (at 13) that these concerns are unwarranted because the preliminary injunction issued by the U.S. District Court for the Eastern District of California requires Nexstar to hold separate TEGNA's assets and licenses. *See In re: Nexstar-TEGNA Merger Litig.*, 2026 WL 1049295, at \*29 (E.D. Cal. Apr. 17, 2026), *appeal filed sub nom. DirecTV v. Nexstar Media Grp.*, No. 26-2490 (9th Cir.). But Nexstar is currently appealing that injunction. And because "a prior injunction may later be appealed or modified," as Nexstar seeks, "the existence of such an injunction is not necessarily adequate to protect the interests of other parties." *All. for Retired Ams. v. Bessent*, 770 F. Supp. 3d 79, 110-11 (D.D.C. 2025) (collecting cases). That is particularly true here because Nexstar repeatedly invoked the FCC's order as a basis for opposing preliminary relief in that case. *See In re: Nexstar-TEGNA Merger,*

---

[2] Emergency Pet. for Stay & Inj., Dkt. No. 25-331 (FCC, Mar. 20, 2026), https://www.fcc.gov/ecfs/document/103201544203305/1

2026 WL 1049295, at *26 ("Defendants argue an injunction would harm the public interest as follows: it would create a conflict with the FCC Order . . . and undermine congressional intent because the FCC, in its role as a regulator, has already cleared the Transaction."); *see also id.* at *22, 25, 27. Nexstar should not be permitted to use the FCC's order to oppose that injunction while relying on the same injunction here to shield the FCC's order from review.

That the preliminary injunction is currently in effect is particularly cold comfort given Nexstar's haste to integrate TEGNA. Within 15 minutes of the Bureau's order, Nexstar publicized that the merger was complete. Nexstar and TEGNA "rush[ed] to close" their merger, notwithstanding the pending antitrust litigation and the need for orderly review of the Media Bureau's order. *In re: Nexstar-TEGNA Merger*, 2026 WL 1049295, at *28. Nexstar nowhere suggests that, should the Ninth Circuit reverse or modify the preliminary injunction, it will not engage in another mad dash to integrate TEGNA's assets, fire employees, consolidate newsrooms, and more. And if that happens before the full Commission has reviewed the license transfer decision—*maybe* by the end of 2026—then there is a serious danger that this Court will be unable to review the merger before Nexstar subsumes TEGNA.

**B.** Nexstar insists that the Commission's languorous review is not a problem because, if and when the Commission eventually approves the merger, this Court

could ultimately reverse that decision and order a transfer of licenses from Nexstar to TEGNA months (or years) down the road. Therefore, according to Nexstar (at 7-8), Appellants face no irreparable harm.

But Nexstar simply ignores the irreparable harm that Public Interest Appellants face from the merger. Unions and their members face worsening bargaining conditions and labor agreements, in addition to layoffs. *See* App.735-41 ¶¶ 7-26. Meanwhile, the changes Nexstar has stated it will make in pursuit of so-called "synergies" thwart the Public Interest Appellants' work by displacing local news, raising costs, reducing local election coverage in the throes of an election with massive national importance, and cutting off avenues for advocacy. *See* App.744-46 ¶¶ 5-14; App.576 ¶¶ 5-19; App.584-86 ¶ 7-13; App.590-91 ¶¶ 8-9. As previously explained, Stay Mot. 20-22; Reply 9-10, these harms cannot be remedied by transferring the licenses back to TEGNA after the companies have merged. On that score, Nexstar is silent.

**C.** For the reasons set forth above, and those in the Industry Appellants' concurrent filings, mandamus is warranted now. But if the Court is not prepared to grant mandamus at this time because of the *DirectTV* preliminary injunction, it should hold the petitions in abeyance while the merger is enjoined. Holding the petitions in abeyance would ensure that, should the Ninth Circuit reverse or modify the preliminary injunction, or the district court deny a permanent injunction, this

6

Court has an opportunity to preserve the status quo before Nexstar and TEGNA take further actions to integrate their operations. *See, e.g., In re: Nexstar-TEGNA Merger Litig.*, 2026 WL 1049295, at *27 (finding that "integration efforts . . . would make it more difficult to divest TEGNA stations, as they will eliminate competition and result in newsroom layoffs and shutdowns"). And that will avoid the burdens on the Court and the parties from renewed emergency mandamus petitions.

By Nexstar's and the FCC's own telling, the Ninth Circuit could undo the preliminary injunction this fall. But the FCC will not commit to more than an "expect[ed]" attempt to rule on the merger by the end of this year. That means that if Nexstar prevails in the Ninth Circuit, it will potentially be months (or longer) before the FCC acts. And given Nexstar's haste to act within 15 minutes of the Bureau's order, those months would allow it to combine the companies in ways that would be impossible to undo.

Moreover, the Media Bureau ignored both substantive and procedural limits on its power to decide important questions of law (that are not present in the antitrust case). Given the FCC's refusal to commit to acting on the pending applications for review in a timely fashion, abeyance would guarantee that the FCC's inaction does not effectively "insulate[]" the Media Bureau's order "from further review." *In re Core Comms.*, 531 F.3d 849, 856 (D.C. Cir. 2008). To that end, the Court may wish to provide for an automatic administrative stay of the FCC's order if the *DirecTV*

preliminary injunction ceases to be in effect. And in the meantime, this Court should retain jurisdiction and direct the Commission to file a report every 30 days regarding the status of the application for review.

## CONCLUSION

For these reasons, the Court should issue a writ of mandamus directing the full Commission to act on Appellants' application for review and to stay the Media Bureau's order pending this Court's review. In the alternative, the Court should hold the petitions for mandamus in abeyance while the merger is enjoined and order the Commission to report on the status of the application for review every 30 days.

Respectfully submitted,

Gigi B. Sohn
G Squared Strategies
3503 Alton Place, NW
Washington, DC 20008

s/ *Paul R.Q. Wolfson*
Paul R.Q. Wolfson
Kali Schellenberg
Bradley Girard
Andrew Bookbinder
Simon C. Brewer
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

*Counsel for Appellants-Petitioners in No. 26-1065*

May 18, 2026

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation set forth in this Court's order of April 28, 2026, because it contains 1749 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(a)(1).

2. This brief complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and Federal Rule of Appellate Procedure 32(a)(6)'s typestyle requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

May 18, 2026

*s/ Paul R.Q. Wolfson*
Paul R.Q. Wolfson

**CERTIFICATE OF SERVICE**

I certify that, on May 18, 2026, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

s/ *Paul R.Q. Wolfson*
Paul R.Q. Wolfson