**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 26-1062 (consolidated with No. 26-1065)**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

BROADBAND COMMUNICATIONS ASSOCIATION
OF PENNSYLVANIA, et al.,
*Appellants/Petitioners*,
v.
FEDERAL COMMUNICATIONS COMMISSION,
*Appellee/Respondent*.

DIRECTV, LLC,
*Intervenor for Appellants/Petitioners*,

NEXSTAR MEDIA INC.,
*Intervenor for Appellee/Respondent*.

On Appeal of an Order of the Federal Communications Commission
MB Docket No. 25-331

**REPLY TO OPPOSITIONS TO EMERGENCY PETITIONS FOR
MANDAMUS**

Michael Nilsson
Timothy J. Simeone
E. Austin Bonner
Jason Neal
HWG LLP
1919 M St., NW, 8th Floor
Washington, DC 20036
(202) 730-1300
tsimeone@hwglaw.com

May 18, 2026                    *Counsel for DIRECTV, LLC*

**TABLE OF CONTENTS**

TABLE OF CONTENTS......................................................................................... i

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................3

I.  THE COMMISSION'S PROPOSED TIMELINE FOR RULING ON THE APPLICATION FOR REVIEW IS UNJUSTIFIABLE. .......................................3

II. THIS COURT SHOULD STAY THE EFFECT OF THIS WAIVER AND FURTHER WAIVERS OF THE NATIONAL CAP. .........................................4

A. The Courts' Authority to Issue Temporary Injunctive Relief to Protect the Judicial Process and Conserve Judicial Resources Is Well Established. ........5

B. Structural and Institutional Irreparable Harms Not Addressed by the Preliminary Injunction Justify Relief Here.......................................................7

III. ALTERNATIVELY, THE COURT SHOULD RECONSIDER ITS APPLICATION OF 47 U.S.C. § 155(c)(3). .....................................................9

CONCLUSION.................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*,
  398 U.S. 281 (1970)........................................................................5, 7

*Battle v. Liberty Nat'l Life Ins. Co.*,
  877 F.2d 877 (11th Cir. 1989) .........................................................6

*Carlough v. Amchem Prods., Inc.*,
  10 F.3d 189 (3d Cir. 1993) ..............................................................5

*Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*,
  467 U.S. 837 (1984).........................................................................9

*Comm. to Save WEAM v. FCC*,
  808 F.2d 113 (D.C. Cir. 1986).........................................................9

*FTC v. Dean Foods Co.*,
  384 U.S. 597 (1966).....................................................................5, 6

*In re Baldwin-United Corp.*,
  770 F.2d 328 (2d Cir. 1985) .........................................................5, 7

*In re Factor VIII or IX Concentrate Blood Prods. Litig.*,
  159 F.3d 1016 (7th Cir. 1998) .........................................................6

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024)....................................................................8, 10

*Prometheus Radio Project v. FCC*,
  No. 03-3388, 2003 U.S. App. LEXIS 18390 (3d Cir. Sept. 3, 2003).............4, 5

*Telecomms. Rsch. & Action Ctr. v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984).........................................................9

## STATUTES

28 U.S.C. § 1651(a) ............................................................................5

47 U.S.C. § 155.................................................................................2

47 U.S.C. § 155(c)(3)................................................................9, 11

47 U.S.C. § 402(b) ........................................................................4

## REGULATIONS

47 C.F.R. § 0.283(c)......................................................................3

47 C.F.R. § 1.102(a)(3) ................................................................10

## OTHER AUTHORITIES

Applications for Assignment of Authorization, *Comprehensive Exhibit*, LMS File Nos. 0000290962 *et al.* (filed Mar. 13, 2026) (as amended)......................................................................................8

## INTRODUCTION

Nexstar and the FCC's position boils down to this: An agency can direct one of its subordinate bureaus to issue hugely consequential decisions that fail to comply with express congressional directives and the fundamental requirement of reasoned decisionmaking.  Such bureau decisions, the argument goes, are sufficiently "final" to reshape an entire industry.  But this Court cannot review them—no matter how unlawful or capricious they might be—unless the agency itself ratifies them in its sole discretion and with no deadline.  The agency may refuse to rule at all or may choose to do so only after it is far too late to undo the damage.  If meaningful judicial review disappears, that is simply too bad.

This Court should end this administrative-law shell game now.  As Appellants have argued, a mandamus order directing the Commission to rule swiftly on the pending application for review would ensure timely judicial review of the issues presented in this case—including the legality of waiving the national cap set by Congress and the adequacy of the Media Bureau's ("Bureau") reasoning regarding local consolidation.  Mandamus here would also signal to all agencies that delegating complex and consequential decisions cannot insulate them from judicial review.

This Court should also consider relief under the All Writs Act to preserve the status quo before industry change becomes irreversible, while also protecting

the Court's own interest in orderly and meaningful review. The Media Bureau's order ("Order or Bureau Order") challenged here has *already* begun to transform the broadcast marketplace. A second request for waiver of the national cap is pending at the agency and more will surely follow. This Court must accordingly anticipate serial emergency proceedings in both merger and non-merger cases—each re-posing the core question of this Court's authority to review purportedly "non-final" bureau-level decisions specifically designed to thwart judicial review.

The preliminary injunction issued by the California district court cannot address these concerns—both because the Ninth Circuit could vacate it and because that injunction cannot prevent the FCC from engaging in the same shell game again and again. Yet the All Writs Act provides this Court a tool tailored to address precisely this sort of systemic, irreparable harm.

A narrow, targeted All Writs injunction would not interfere with the FCC's continued review of mergers and waivers of the national cap. It would simply *stay the effectiveness of all national cap waivers*, here and in any cases to come, until the critical question of the FCC's authority to waive the cap can be addressed.

Alternatively, as also set forth below, this panel could end the FCC's gamesmanship once and for all by referring the pending motions to the full Court and adopting Judge Buckley's plain-language construction of 47 U.S.C. § 155 as

2

requiring an automatic stay of staff-level orders subject to applications for review until the full Commission has ruled.

## ARGUMENT

**I.    THE COMMISSION'S PROPOSED TIMELINE FOR RULING ON THE APPLICATION FOR REVIEW IS UNJUSTIFIABLE.**

As Appellants have explained, this Court should grant mandamus to end the agency's smoke-and-mirrors evasion of effective judicial review.  DIRECTV joins those arguments, which correctly underscore that the FCC's position contradicts its claim that this case lies within the Bureau's delegated authority.

The Bureau issued its Order less than four months after accepting Nexstar's application for filing—far faster than the ordinary timeline for FCC merger review. *See* DIRECTV Stay Resp. at 22.  And the Bureau achieved this extraordinary administrative alacrity despite the unprecedented size of the transaction and the first-ever waiver of the national cap.

In stark contrast to the Bureau's "hurry-up offense," the FCC now claims that full-Commission review will take more than nine months from the filing of the application for review.  Yet if the Bureau acted within its delegated authority, the Order should not involve any novel issues.  Commission review should be straightforward. *See* 47 C.F.R. § 0.283(c).  The elongated timeline the Commission submitted to this Court thus indicates either that the Bureau acted beyond its delegated authority or that the Commission intends to take an inordinate

3

amount of time for its review.  The Court should not endorse either option.  As

Appellants correctly continue to urge, this Court can address this issue with a

mandamus order directing the Commission to conclude its review expeditiously.

Cable Reply at 3–4, 6–8; Public Interest at 2–5.  This would enable the Court to

address all of the issues in this case promptly, including the legality of waiving the

national cap and the Bureau's arbitrary approach to local consolidation.

## II.    THIS COURT SHOULD STAY THE EFFECT OF THIS WAIVER AND FURTHER WAIVERS OF THE NATIONAL CAP.

While DIRECTV joins Appellants' arguments for a mandamus order, it

urges action in addition or in the alternative under the All Writs Act, also invoked

by Appellants.  Without direction from this Court, the Commission is poised to

repeat the errors at issue here, radically reshaping the broadcast market and setting

off a chain of repetitious emergency proceedings in this Court.  *See* 47 U.S.C.

§ 402(b) (directing all FCC license transfer appeals to the D.C. Circuit).  This

Court can use its All Writs authority to enjoin all "waivers" of the national cap—

again, both here and in the cases to come—*from becoming effective* until the Court

has an opportunity to review the legality of such waivers.  Doing so will preserve

the status quo, just as the Third Circuit did under similar circumstances in

*Prometheus Radio Project v. FCC*, No. 03-3388, 2003 U.S. App. LEXIS 18390

(3d Cir. Sept. 3, 2003).  And it will protect the Court's orderly exercise of its

supervisory jurisdiction, allowing it to resolve critical legal issues once and for all

before proliferating emergency proceedings and irreversible market restructuring can preclude meaningful judicial review. *See id.*

### A. The Courts' Authority to Issue Temporary Injunctive Relief to Protect the Judicial Process and Conserve Judicial Resources Is Well Established.

The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions," 28 U.S.C. § 1651(a), including interim injunctive relief necessary to preserve a court's ability to render effective relief. *FTC v. Dean Foods Co.*, 384 U.S. 597, 603–05 (1966). Courts have repeatedly used this authority to preserve the status quo and facilitate orderly judicial review, issuing injunctions that may extend far beyond the parties before them.

The Second Circuit, for example, upheld a multidistrict litigation ("MDL") court's decision to enjoin *all* collateral state actions involving *any* parties seeking to litigate claims overlapping a federal settlement structure involving thousands of investors where such state proceedings could "seriously impair the federal court's flexibility and authority" to resolve the MDL proceedings coherently. *In re Baldwin-United Corp.*, 770 F.2d 328, 337–38 (2d Cir. 1985) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970)). And other circuits have approved similar uses of the All Writs Act. *See, e.g., Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 204 (3d Cir. 1993) (upholding an All Writs Act

5

injunction freezing certain state-court asbestos litigation nationwide because it would have a "detrimental effect upon the district court's ability to effectuate the settlement of this complex and far-reaching matter"); *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 159 F.3d 1016, 1020 (7th Cir. 1998) (upholding All Writs relief enjoining lawyers from litigating to enforce contingent-fee contracts or liens that could have interfered with a consent decree); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 880–82 (11th Cir. 1989) (affirming an injunction issued pursuant to the All Writs Act and the Anti-Injunction Act restraining state-court suits to relitigate issues governed by the federal decree).

Because these injunctions protecting the judicial process serve a different purpose from a traditional stay to protect the rights of the parties, they turn on a different irreparable harm analysis. The Supreme Court's decision in *Dean Foods*, for example, held that a court of appeals possesses authority to issue All Writs relief to prevent later judicial review or administrative relief from becoming ineffective as a practical matter. 384 U.S. at 605 (finding future efforts by the courts to remedy merger harms could be rendered "futile" by company integration pending review). The *Baldwin-United* court even more expressly highlighted institutional harms rather than harms to parties, explaining that broad All Writs relief was necessary to prevent collateral proceedings from "seriously impair[ing]

6

the federal court's flexibility and authority" in the MDL.  770 F.2d at 337 (quoting

*Atl. Coast Line R.R. Co.*, 398 U.S. at 295).

> **B.    Structural and Institutional Irreparable Harms Not Addressed by the Preliminary Injunction Justify Relief Here.**

Appellants' Motions for Stay and DIRECTV's response focused primarily

on the parties' irreparable harm because such harm provides the justification for a

traditional stay.  But the parties *also* extensively emphasized the broader harms

here to the judicial process.  The preliminary injunction under review by the Ninth

Circuit does not and could not address those harms, so action by this Court is

needed no matter what the Ninth Circuit decides.

Absent intervention, the Bureau's Order will become a template for future

merger approvals relying on purported waivers of the national cap.  For example,

the Industry Appellants argued that this Court's failure to intervene now "would

virtually ensure that all future mergers reviewed by the FCC—especially ones that

are politically favored yet clearly contrary to the public interest—get routed to the

Media Bureau," while applications for review remain pending and mergers proceed

toward consummation.  Cable Notice of Appeal at 30.  As Appellants also

explained, without judicial intervention, the agency could effectively keep

challengers "in a holding pattern until the merger goes through." *Id.*  That would

reduce parties' statutory right to review to a "mere parchment guarantee." *Id.*

at 29.

As noted above, these concerns are not merely hypothetical.  There is already another merger pending before the Commission that, if approved, would exceed the national cap.  *See* Applications for Assignment of Authorization, *Comprehensive Exhibit*, LMS File Nos. 0000290962 *et al.* (filed Mar. 13, 2026) (as amended).  And, as DIRECTV has warned, there will likely be "many more" such transactions, raising the specter of a "fundamentally altered media landscape" before this Court can reach the merits—which include critical statutory interpretation questions that *Loper Bright Enterprises v. Raimondo* concludes fall to this Court to decide—if no injunctive relief issues.  DIRECTV Reply at 7–8; 603 U.S. 369, 400 (2024).

In short, absent temporary injunctive All Writs relief to preserve the industry status quo now, the FCC's continuing issuance of national cap waivers will threaten both fundamental changes to the broader media market and repeated emergency litigation that may substantially impair this Court's ability to resolve the key legal questions at stake in an orderly and coherent manner.  Each additional waiver approval will generate new emergency stay motions and other requests for expedited relief to this Court—including some that may *not* result in a separate preliminary injunction issued by a district court—posing precisely the type of threat to orderly future judicial review that this and other courts have recognized as

justifying relief under the All Writs Act.  *See, e.g., Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C. Cir. 1984).

## III.   ALTERNATIVELY, THE COURT SHOULD RECONSIDER ITS APPLICATION OF 47 U.S.C. § 155(c)(3).

Section 155(c)(3) provides that bureau orders "shall have the same force and effect" as Commission orders *"unless" subject to an application for review*.  47 U.S.C. § 155(c)(3) (emphasis added).  There, Congress appears to have determined that bureau orders should not go into effect if appealed to the full Commission on an application for review.  In this case, Appellants and DIRECTV have filed such an application for review, which has been pending for nearly two months.

Writing for the panel in *Committee to Save WEAM v. FCC*, 808 F.2d 113 (D.C. Cir. 1986), Judge Buckley agreed with the Committee's plain-language construction of Section 155(c)(3) as automatically staying bureau decisions submitted for review by the full Commission.  *Id.* at 119.  However, "the other members of the panel [found] the statutory language" sufficiently "ambiguous" to uphold the Commission's interpretation that it has discretion whether to stay a bureau decision pending full-Commission review to be a "permissible construction of the statute."  *Id.* (quoting *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 866 (1984)).  Even if the majority was correct to find ambiguity in statutory language that appears plain, however, that is no longer the relevant inquiry.  Under *Loper Bright*, the question is the "best reading" of the statute.  603

9

U.S. at 400. (reversing *Chevron* and holding that courts must "use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity").

Nexstar is thus incorrect when it states that "Congress expressly provided that . . . bureau orders have immediate 'force and effect.'" Nexstar Opp'n at 22. The *best* reading of Section 155(c)(3) is that decisions taken on delegated authority, like the Bureau Order here, should not go into effect if subject to an application for review—again, like the Bureau Order here.[1]  Under such a regime, Commission staff could still act.  Absent an application for review, such orders would take effect.  And where an application for review is filed, the Commission could *either* quickly endorse the order (and thereby make it effective) *or* take additional time to consider the issues (and thereby defer the effective date).  The Commission can, of course, also choose to act itself in the first instance, and its orders would become effective immediately.  In all of these scenarios, adopting Judge Buckley's construction would effectuate the best and most faithful reading

---

[1] Notably, an automatic stay *would* have resulted here if the Commission had—as the law requires—designated the important factual issues in dispute for a hearing before an administrative law judge and that judge's decision had been subject to an application for review.  Under the Commission's rules governing the hearing-designation context, filing an application for review of the administrative law judge's decision stays that decision until the Commission itself acts.  *See* 47 C.F.R. § 1.102(a)(3) ("If an application for review" of an administrative law judge's hearing decision is filed, "the effect of the decision is stayed until the Commission's review of the proceeding has been completed.").

10

of the statute; ensure timely, meaningful judicial review; and avoid the emergency-pleading chaos that is otherwise likely to ensue in this Court on a wide variety of significant matters well beyond mergers.

## CONCLUSION

For the reasons set forth above, this Court should grant mandamus requiring the Commission to expeditiously rule on the application for review.  In addition or in the alternative, the Court should stay the effectiveness of all bureau and Commission waivers of the national cap until this Court can address the legality of such waivers or adopt the original, plain meaning of 47 U.S.C. § 155(c)(3), automatically staying bureau-level orders while they remain subject to applications for full-Commission review.

Dated: May 18, 2026

Respectfully submitted,

/s/

Michael Nilsson
Timothy J. Simeone
E. Austin Bonner
Jason Neal
HWG LLP
1919 M St., NW, 8th Floor
Washington, DC 20036
(202) 730-1300
tsimeone@hwglaw.com

Counsel for DIRECTV, LLC

11

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing document complies with the requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in 14-point Times New Roman font.  I further certify that the foregoing document complies with the requirements of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,484 words according to the word-count feature of Microsoft Word.

<u>/s/ Timothy J. Simeone</u>
Timothy J. Simeone

## CERTIFICATE OF SERVICE

I hereby certify that, on May 18, 2026, the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit.  Service was accomplished on all parties or their counsel of record via CM/ECF.  I also caused a true copy of the foregoing to be served upon the Commission's general counsel by email to LitigationNotice@fcc.gov.

/s/ Timothy J. Simeone
Timothy J. Simeone