## ORAL ARGUMENT NOT YET SCHEDULED

**No. 26-1062 (consolidated with No. 26-1065)**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

BROADBAND COMMUNICATIONS ASSOCIATION
OF PENNSYLVANIA, et al.,
*Appellants/Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION,
*Appellee/Respondent*.

DIRECTV, LLC,
*Intervenor for Appellants/Petitioners*,

NEXSTAR MEDIA INC.,
*Intervenor for Appellee/Respondent*.

On Appeal of an Order of the Federal Communications Commission
MB Docket No. 25-331

## OPPOSITION OF DIRECTV, LLC TO THE
## FEDERAL COMMUNICATIONS COMMISSION'S
## MOTION TO DISMISS APPEALS

Michael Nilsson
Timothy J. Simeone
E. Austin Bonner
Jason Neal
HWG LLP
1919 M St., NW, 8th Floor
Washington, DC 20036
(202) 730-1300
tsimeone@hwglaw.com
*Counsel for DIRECTV, LLC*

May 29, 2026

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................3

ARGUMENT .......................................................................................................4

I.   ALLOWING THIS ORDER TO GO UNREVIEWED WOULD PROVIDE A
     ROADMAP FOR EXECUTIVE AGENCIES TO EVADE MEANINGFUL
     JUDICIAL REVIEW IN THE FUTURE. .......................................................5

II.  THE COURT SHOULD FIND THE ORDER APPROPRIATE FOR
     JUDICIAL REVIEW UNDER THE CIRCUMSTANCES OF THIS CASE. .....8

III. THE COURT SHOULD ALSO ADDRESS THIS ISSUE BY REVISITING
     THE APPLICATION OF SECTION 155. .......................................................9

CONCLUSION ...................................................................................................12

i

# TABLE OF AUTHORITIES

## CASES

*Blue Ridge Env't Def. League v. NRC*,
   668 F.3d 747 (D.C. Cir. 2012)..................................................................4

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
   467 U.S. 837 (1984)..............................................................................10

*Comm. to Save WEAM v. FCC*,
   808 F.2d 113 (D.C. Cir. 1986)..............................................................10

*In re Nexstar-TEGNA Merger Litig.*,
   No. 2:26-cv-00976, 2026 U.S. Dist. LEXIS 85526
   (E.D. Cal. Apr. 17, 2026).........................................................................6

*Int'l Telecard Ass'n v. FCC*,
   166 F.3d 387 (D.C. Cir. 1999)................................................................8

*Irons v. Diamond*,
   670 F.2d 265 (D.C. Cir. 1981)................................................................8

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024)..............................................................................11

## STATUTES

42 U.S.C. § 402(b) ...............................................................................6, 9

47 U.S.C. § 155(c) ....................................................................................9

47 U.S.C. § 155(c)(3)......................................................................9, 10, 11

47 U.S.C. § 155(c)(7)............................................................................8, 9

## REGULATIONS

47 C.F.R. § 0.283(c)................................................................................11

47 C.F.R. § 1.102(a)(3)...........................................................................10

ii

## RULES

Fed. R. App. P. 40(g) ..................................................................................8

## OTHER AUTHORITIES

Applications for Assignment of Authorization,
*Comprehensive Exhibit*, LMS File Nos. 0000290962 *et al.*
(filed Mar. 13, 2026) (as amended) ...................................................7

Emergency Application for Review of the Broadband
Communications Association of Pennsylvania *et al.*,
MB Docket No. 25-331 (filed Mar. 20, 2026).....................................4

Nexstar Media Group, Inc., Annual Report (Form 10-K)
(Feb. 27, 2026).....................................................................................3

Opening Br. for Defendants-Appellants,
*DIRECTV, LLC v. Nexstar Media Grp.*, No. 26-2490
(9th Cir. May 20, 2026) .......................................................................6

## INTRODUCTION

This case highlights a systemic threat to the Court's ability to perform its critical role in reviewing agency action.  Here, the FCC approved a mega-merger—"waiving" the 39% national ownership cap for the first time and ignoring extensive record evidence of harm from 27 new Big Four duopolies or triopolies (even after Nexstar divestitures)—by directing the Media Bureau to issue an order ("Order") rather than adopting one reflecting a full-Commission vote.  That Order was sufficiently final to allow the parties to consummate the transaction—which they did moments after the Order was issued.  And the Commission has endorsed the Bureau's reasoning and result without reservation before this Court.  Yet despite the Order's real-world effect and that stamp of approval, the Commission maintains that this Court has no choice but to stand idly by unless and until the full Commission chooses to review the Order and issue another decision.

But the Commission's control of the timing of that review is practically unfettered, and past cases have languished for years—during which regulated entities and staff must treat the decision as final.  If the Court sanctions this gambit, *any* agency that has empowered staff to make decisions on delegated authority could insulate its decisions, for years, by ordering staff to issue the agency's desired decision.  This may not be problematic in the ordinary case in which the Commission's bureaus, or equivalents at other agencies, decide matters that do not

1

involve novel questions of law or policy.  Such decisions do not require urgent judicial review and typically do not even attract an application for review by the full Commission.  But this is not such a case.  This merger will radically transform our broadcast television landscape, and the Commission has never addressed anything like it.  Again, the Commission has never before waived the broadcast ownership limits set by Congress, nor has it authorized such far-reaching consolidation of broadcast station ownership in local markets—and particularly not while dismissing the harms from such consolidation as irrelevant.  As DIRECTV and other participants in the proceeding have consistently argued, the merger thus presents novel legal and policy questions.

Appellants, DIRECTV, and others have argued that this Court has the authority to review the legality of the Order's decisions on those questions.  Equally important, however, this Court *should* conduct such a review—and do so now rather than waiting for an indeterminate period wholly within the discretion of the agency for the full Commission to resolve the pending application for review.  Affirming its willingness and ability to exercise jurisdiction over such cases would not only enable the Court to uphold the law in a timely manner, but also preserve the Court's critical role in our administrative law regime as a necessary bulwark against unchecked expansion of administrative power.

## BACKGROUND

This transaction represents an unprecedented attempt by America's largest broadcaster to acquire the second largest broadcaster. Prior to this transaction, Nexstar owned 201 stations in 116 markets and sought to purchase TEGNA, which owned 64 stations in 51 markets. Combining these two station groups would allow Nexstar to cover more than 80 percent of U.S. households, including 9 of the 10 biggest markets. *See* Nexstar Media Group, Inc., Annual Report (Form 10-K) at 7 (Feb. 27, 2026). In addition, the combination would create a "duopoly" or "triopoly" of "Big Four" affiliates (*i.e.* ABC, NBC, CBS, and FOX) in 27 local markets (taking into account divestitures Nexstar agreed to) covering tens of millions of households.

In approving this transaction, the FCC's Media Bureau waived the "national cap," which prohibits a commercial television licensee from having a cognizable interest in television stations that have an aggregate national audience reach above 39%.[1] This was the first time that any station group has been authorized to exceed the national cap. The Bureau also glossed over or completely ignored extensive arguments and evidence about the deleterious effects of the transaction, including the ability it would give Nexstar to demand that multichannel video programming

---

[1]    After taking into account the 50% discount applied to UHF stations, Nexstar would be deemed to serve 54.5% of the national audience rather than 80% for purposes of the national cap. *See* Order ¶ 9.

distributors such as DIRECTV—and indirectly, their customers—pay higher retransmission consent fees.

The Order was issued on March 19, 2026. The parties closed the transaction moments later. The next day, Appellants and DIRECTV filed an application for review by the full Commission,[2] which has been pending for over two months.

## ARGUMENT

The posture of this case highlights a developing threat to our system of administrative law. The FCC and other agencies can choose to resolve issues through orders issued by a bureau or other subdivision on delegated authority. Such orders often have immediate effects on the parties involved as well as on third parties that deal with them.[3] In this case, for example, Nexstar and TEGNA consummated their transaction just moments after release of the Order. Yet the Commission—having chosen to approve the transaction at the Bureau level—now contends that its choice effectively precludes this Court from hearing an appeal

---

[2]  *See* Emergency Application for Review of the Broadband Communications Association of Pennsylvania *et al.* at 1-13, MB Docket No. 25-331 (filed Mar. 20, 2026).

[3]  For purposes of the Hobbs Act, an order is generally final if it "imposes an obligation, denies a right, or fixes some legal relationship, usually at the consummation of an administrative process." *Blue Ridge Env't Def. League v. NRC*, 668 F.3d 747, 753 (D.C. Cir. 2012) (citation omitted).

unless and until the Commission decides to rule on the pending application for review on a timeframe within its own discretion.

If endorsed by the Court, the Commission's argument would establish a template for agencies to evade judicial review of important decisions. Without judicial review, the bedrock administrative law principle of reasoned decision-making cannot endure, leaving no remedy for agency decisions like this that have dramatic consequences for the parties and the public. And the problem is far larger than this case—if the Commission is right, appellate courts will be unable to address arbitrary and capricious action across a range of agencies and industries.

Fortunately, the Court need not abdicate its role in our administrative system as the Commission demands. It can instead find that the Order and other orders like it are sufficiently final to satisfy the requirements for judicial review. In addition, the Court could revisit an old precedent decided based on deference to the Commission's statutory interpretation and find that the better reading of the statute offers a solution to the specter of administrative overreach.

I.    **ALLOWING THIS ORDER TO GO UNREVIEWED WOULD PROVIDE A ROADMAP FOR EXECUTIVE AGENCIES TO EVADE MEANINGFUL JUDICIAL REVIEW IN THE FUTURE.**

As the Court is aware, private parties cannot force a government agency to act on any pending matter. The Commission typically takes a year or more to rule on an application for review (even to *deny* such review, with no changes). By that

5

time, without intervention by the federal courts, the decision approving the transaction would be a distant memory in a fundamentally altered media landscape. That is particularly true because, while there is currently a "hold separate" order in place limiting the ability of Nexstar and TEGNA to integrate, *see In re Nexstar-TEGNA Merger Litig.*, No. 2:26-cv-00976, 2026 U.S. Dist. LEXIS 85526, at *2-3 (E.D. Cal. Apr. 17, 2026), *appeal filed*, Nexstar's pending Ninth Circuit appeal aggressively seeks to narrow that preliminary injunction to require separate operations *only* in the specific local markets where the transaction creates new Big Four duopolies or triopolies. *See* Opening Br. for Defendants-Appellants at 29-36, *DIRECTV, LLC v. Nexstar Media Grp.*, No. 26-2490 (9th Cir. May 20, 2026).

That argument, if successful, would not change the fact that the merger would result in Nexstar's exceeding the national cap, as the parties have explained in this case. Moreover, it would allow much of the irreparable harm from the irreversible integration of the companies here to occur long before judicial review of a full-Commission order could be obtained. And while the district court in California has jurisdiction over the antitrust claims in that case, *this Court* has exclusive jurisdiction over the FCC's decision to authorize the transfer of licenses from TEGNA to Nexstar—and the ability to grant relief in aid of its jurisdiction. *See* 42 U.S.C. § 402(b).

In addition, as we have explained previously, there already is *another* merger pending before the Commission that, if approved, would exceed the national cap—with more sure to follow.  *See* DIRECTV Reply to Oppositions to Emergency Petitions for Mandamus at 8; Applications for Assignment of Authorization, *Comprehensive Exhibit*, LMS File Nos. 0000290962 *et al.* (filed Mar. 13, 2026) (as amended).  On the Commission's view, the entire broadcast ownership landscape could be completely reshaped before this Court could decide the lawfulness of those changes.

The FCC is not the only agency with a staff empowered to make decisions on delegated authority.  Any agency with its own internal structure and similar requirements for administrative exhaustion could push decisions down within that structure and issue decisions subject to full agency review but no specific timeline.  That state of affairs could insulate significant agency decisions against judicial oversight for years at agencies' own discretion.

The result would be an enormous expansion of the power of agencies, and a corresponding diminution in the role of judicial review.  That is contrary to the law and bad policy.  The Constitution does not envision a vast shadow state where unelected officials make effectively unreviewable decisions about technology, the economy, health care, or other core aspects of our lives.  Our representative democracy calls for *Congress* to decide major questions, for *agencies* to implement

congressional policy, and for *courts* to ensure that agencies do so faithfully.  This Court should enforce that constitutional regime here, rather than embrace the Commission's call for abdication of the role of judicial review.

## II.    THE COURT SHOULD FIND THE ORDER APPROPRIATE FOR JUDICIAL REVIEW UNDER THE CIRCUMSTANCES OF THIS CASE.

DIRECTV joins in Appellants' arguments regarding the Court's jurisdiction. As Appellants explain (at 10), the Commission has all but denied the Application for Review, with the only thing missing being the issuance of the formal document that would ensure this Court could review the merger approval.  And the Commission's opposition to the emergency petitions for writ of mandamus makes clear that issuance of that document is unlikely to occur for many months absent this Court's intervention.  Under those circumstances, it is evident that there is not truly "[o]ngoing agency review" that should delay judicial review.  *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) (per curiam).  Moreover, as Appellants argue, (at 10 n.3) to the extent that the Court concludes that the *per curiam* decision in *International Telecard* precludes the exercise of jurisdiction here, the Court should overrule it under *Irons v. Diamond*, 670 F.2d 265, 267-68 (D.C. Cir. 1981), given the proper interpretation of 47 U.S.C. § 155(c)(7).[4]

---

[4]    If necessary, this Court has authority to refer matters presented to a motions panel to the *en banc* Court.  *See* Fed. R. App. P. 40(g) (authorizing initial hearing *en banc* of "an appeal or other proceeding").

In its motion, the Commission argues that the second sentence of Section 155(c)(7) supports its argument for dismissal by providing that "[t]he time … within which an appeal *must be taken* under [47 U.S.C. § 402(b)], shall be computed from the date upon which public notice is given of orders disposing of all applications for review filed in any case." 47 U.S.C. § 155(c)(7) (emphasis added). From this, the Commission asserts that the window for filing an appeal "does not *open* until the FCC has acted on all pending applications for review of staff decisions." Mot. to Dismiss at 6 (emphasis added).

The Commission's reliance on this provision is misplaced. Section 155(c)(7) establishes the latest date by which a party *must* file an appeal. It does not, as the Commission would have it, also establish the earliest date on which a party *may* file an appeal. Nothing requires a party to wait until the last minute before seeking judicial review, and the Commission's implicit assertion to the contrary is simply erroneous.

### III.   THE COURT SHOULD ALSO ADDRESS THIS ISSUE BY REVISITING THE APPLICATION OF SECTION 155.

The Court should revisit the application of 47 U.S.C. § 155(c)(3)—which provides that Bureau orders "shall have the same force and effect" as Commission orders "*unless*" subject to an application for review—to situations like this. 47 U.S.C. § 155(c)(3) (emphasis added). In Section 155(c), Congress authorized the Commission to delegate certain of its functions to its bureaus or other parts of

the agency, but determined that those bureau orders should *not* go into effect if appealed to the full Commission on an application for review.[5]  In this case, Appellants and DIRECTV have filed such an application for review of the Bureau's Order, which has been pending for over two months.

Forty years ago, in *Committee to Save WEAM v. FCC*, 808 F.2d 113 (D.C. Cir. 1986), this Court considered the argument that Section 155(c)(3) should automatically stay Bureau decisions submitted for review by the full Commission. Writing for the panel, Judge Buckley agreed with this plain-language construction of the statute.  However, "the other members of the panel [found] the statutory language" sufficiently "ambiguous" to uphold the Commission's interpretation that it had *discretion* whether to stay a Bureau decision pending full-Commission review to be a "'permissible construction of the statute.'"  *Id.* at 119 (quoting *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 866 (1984)).  Even assuming that the majority was correct to find ambiguity in statutory language that appears

---

[5]  Notably, as DIRECTV also explained in support of mandamus or All Writs Act relief, an automatic stay would have resulted here if the Commission had—as the law requires—designated the important factual issues in dispute for a hearing before an administrative law judge and that judge's decision had been subject to an application for review.  Under the Commission's rules governing the hearing-designation context, filing an application for review of the administrative law judge's decision stays that decision until the Commission itself acts.  *See* 47 C.F.R. § 1.102(a)(3) ("If an application for review" of an administrative law judge's hearing decision is filed, "the effect of the decision is stayed until the Commission's review of the proceeding has been completed.").

plain, however, that is no longer the relevant inquiry: Under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 373 (2024), the question is what is the "best reading" of the statute.

The best reading of Section 155(c)(3) is that a Bureau decision like this one should not go into effect if subject to an application for review. Under such a regime, bureaus could still act on delegated authority. Absent an application for review—which, again, is the case as to most bureau decisions because they do not address novel questions—such orders would be effective. Any order subject to an application for review would present the Commission the option either to act quickly to endorse the order (and thereby make it effective) or to take additional time to consider the issues (and thereby defer the effective date). The Commission could also choose to act in the first instance itself on important, novel, or complex matters (as its rules require, *see* 47 C.F.R. § 0.283(c)), and its orders would become effective immediately (as they do today). But in all of these scenarios, adopting Judge Buckley's construction of the statute would not only effectuate the best and most faithful reading of the plain language of the statute, but also ensure that the Court and affected parties had an opportunity for meaningful judicial review in a timely manner.

## CONCLUSION

This case presents what could easily become a paradigm for expanding the power of the administrative state by delaying or denying judicial review of agency decisions.  Yet it also presents an opportunity for this Court to make clear that it will not endorse such attempts to undermine the critical role assigned to the judiciary under the Constitution.  Accordingly, this Court should deny the Commission's motion to dismiss this appeal.

Dated: May 29, 2026

Respectfully submitted,

*/s/ Timothy J. Simeone*

Michael Nilsson
Timothy J. Simeone
E. Austin Bonner
Jason Neal
HWG LLP
1919 M St., NW, 8th Floor
Washington, DC 20036
(202) 730-1300
tsimeone@hwglaw.com

*Counsel for DIRECTV, LLC*

12

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing document complies with the requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in 14-point Times New Roman font.  I further certify that the foregoing document complies with the requirements of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,699 words according to the word-count feature of Microsoft Word.

*/s/ Timothy J. Simeone*
Timothy J. Simeone

## **CERTIFICATE OF SERVICE**

I hereby certify that, on May 29, 2026, the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit.  Service was accomplished on all parties or their counsel of record via CM/ECF.

*/s/ Timothy J. Simeone*
Timothy J. Simeone