ORAL ARGUMENT NOT SCHEDULED
**Nos. 26-1062, 26-1065**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

BROADBAND COMMUNICATIONS ASSOCIATION OF
PENNSYLVANIA, ET AL.,
*Appellants*,

v.

FEDERAL COMMUNICATIONS COMMISSION,
*Appellee.*

FREE PRESS, ET AL.,
*Appellants*,

v.

FEDERAL COMMUNICATIONS COMMISSION,
*Appellee.*

On Petitions for Mandamus and Appeals of an Order of the
Media Bureau of the Federal Communications Commission

## INTERVENOR NEXSTAR MEDIA INC.'S REPLY
## IN SUPPORT OF DISMISSAL

Thomas M. Johnson, Jr.
Kathleen A. Kirby
Jeremy J. Broggi
Eve Klindera Reed
Boyd Garriott
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000
TMJohnson@wiley.law

June 5, 2026                    *Counsel for Nexstar Media Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

GLOSSARY.......................................................................................... iv

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................1

    I.    THE COURT LACKS JURISDICTION. ...........................................1

        A.    The Court Lacks Jurisdiction Under Section 402(b). .................1

        B.    The Court Lacks Jurisdiction Under Section 155(c)(7)..............4

        C.    No Equitable Exception Rescues Jurisdiction. ..........................7

    II.    DIRECTV'S DIGRESSION ABOUT AGENCY-LEVEL STAY PRACTICE IS IRRELEVANT. ...................................................................................10

CONCLUSION....................................................................................11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES*

Page(s)

**Cases**

*Bellsouth Corp. v. FCC*,
17 F.3d 1487 (D.C. Cir. 1994)................................................................8, 9

*Committee To Save WEAM v. FCC*,
808 F.2d 113 (D.C. Cir. 1986).................................................................10

*Core Communications, Inc. v. FCC*,
592 F.3d 139 (D.C. Cir. 2010)................................................................10

*Darby v. Cisneros*,
509 U.S. 137 (1993).................................................................................4

*Enbridge Energy, LP v. Nessel*,
146 S. Ct. 1074 (2026).........................................................................8, 9

*FDA v. Wages & White Lion Investments, L.L.C.*,
604 U.S. 542 (2025)..................................................................................9

*Flat Wireless, LLC v. FCC*,
944 F.3d 927 (D.C. Cir. 2019)..................................................................8

*Indian Peak Properties LLC v. FCC*,
No. 23-1223, 2023 WL 8494465 (D.C. Cir. Dec. 7, 2023)......................2

*International Telecard Association v. FCC*,
166 F.3d 387 (D.C. Cir. 1999)..............................................................6, 7

*Jazz Pharmaceuticals, Inc. v. Kennedy*,
141 F.4th 254 (D.C. Cir. 2025)................................................................4

*Kingdomware Technologies, Inc. v. United States*,
579 U.S. 162 (2016).................................................................................6

---

* Authorities upon which we chiefly rely are marked with asterisks.

ii

*Estate of Levin v. Wells Fargo Bank, N.A.*,
   156 F.4th 632 (D.C. Cir. 2025)........................................................................2

*Levine/Schwab Partnership v. FCC*,
   61 F.4th 183 (D.C. Cir. 2023)........................................................................10

*Loper Bright Entersprises v. Raimondo*,
   603 U.S. 369 (2024)........................................................................................10

*NTCH, Inc. v. FCC*,
   877 F.3d 408 (D.C. Cir. 2017)..........................................................................2

*In re NTE Connecticut, LLC*,
   26 F.4th 980 (D.C. Cir. 2022)...........................................................................8

*Pierce v. SEC*,
   786 F.3d 1027 (D.C. Cir. 2015).........................................................................9

*Sprint Nextel Corp. v. FCC*,
   508 F.3d 1129 (D.C. Cir. 2007)........................................................................3

*TeleSTAR, Inc. v. FCC*,
   888 F.2d 132 (D.C. Cir. 1989)..........................................................................5

*United Transportation Union v. ICC*,
   871 F.2d 1114 (D.C. Cir. 1989).........................................................................8

*Waterway Communications Systems., Inc. v. FCC*,
   851 F.2d 401 (D.C. Cir. 1988)......................................................................6, 7

*Western Union Telegraph Co. v. FCC*,
   773 F.2d 375 (D.C. Cir. 1985)..........................................................................6

**Statutes**

47 U.S.C. § 154.....................................................................................................1

*47 U.S.C. § 155............................................................................................2, 4, 5

*47 U.S.C. § 402............................................................................................1, 3, 5

47 U.S.C. § 405.....................................................................................................2

47 U.S.C. § 409.....................................................................................................4

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| FCC or Commission | Federal Communications Commission |

## INTRODUCTION

Appellants' responses to the FCC's motion to dismiss read less like applications of the Communications Act than calls to revise its judicial-review scheme. Whatever the merits of those proposed revisions might theoretically be, Congress has not adopted them, and this Court must apply the statute as written. Thus, this Court lacks "jurisdiction under 47 U.S.C. § 402(b)" because Appellants seek to challenge a "Media Bureau Order … before the Commission has resolved the[ir] application for review." Order at 1-2 (Document #2170860) (Apr. 28, 2026).

## ARGUMENT

**I.     THE COURT LACKS JURISDICTION.**

**A.     The Court Lacks Jurisdiction Under Section 402(b).**

Section 402(b) of the Communications Act grants jurisdiction over "[a]ppeals" from "decisions and orders *of the Commission*." 47 U.S.C. § 402(b) (emphasis added). Appellants do not appeal an "order of the Commission." They appeal an "order of the Media Bureau." Special-Interest.NOA.1; *see also* Industry.NOA.1. There is thus no jurisdiction, as the Court already predicted. *See* Order at 1 (Document #2170860) ("appellants have not shown this court is likely to have jurisdiction under 47 U.S.C. § 402(b)").

Statutory structure supports this straightforward text. "The Commission" is defined in the Communications Act to mean the "commissioners appointed by the President." 47 U.S.C. § 154(a). If the Commissioners do not render a decision, there

1

is no decision "of the Commission."  Indeed, Congress was explicit when it wanted to reach Commission subparts.  For example, Section 405(a) repeatedly refers to "the Commission *or* designated authority within the Commission."  47 U.S.C. § 405(a) (emphasis added).  Similarly, Section 155(c)(3) provides that an action "taken pursuant to … delegation … shall have the same force and effect … as [an action] of the Commission."  47 U.S.C. § 155(c)(3).  That provision would be unnecessary if a delegated authority were synonymous with "the Commission."  *See Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 640 (D.C. Cir. 2025) (reading statute to avoid "surplusage").

Precedent also requires this interpretation.  In *NTCH, Inc. v. FCC*, 877 F.3d 408 (D.C. Cir. 2017), a party sought to appeal a bureau order under a provision that authorized review of final orders of "the Commission."  *Id.* at 413.  The Court dismissed the appeal.  It explained that "[w]hen Congress says 'the Commission,' it means the Commission."  *Ibid.*  It does not mean "delegated subdivisions of the Commission."  *Ibid.*  Because "[t]he Bureau's order was not a Commission order," "it was not an order subject to judicial review."  *Ibid.*  So too here.  *See also Indian Peak Props. LLC v. FCC*, No. 23-1223, 2023 WL 8494465, at *1 (D.C. Cir. Dec. 7, 2023) (per curiam).

Appellants have no answer.  Nowhere in any of the responses does any party opposing dismissal explain how an "order of the Media Bureau" is somehow an

2

"order of the Commission" under Section 402(b).  This even though Section 402(b) is Appellants' *only* way into court.  This even though Nexstar already explained this limitation on Section 402(b)'s grant of jurisdiction.  Nexstar.Stay.Opp.11-12 (citing *NTCH*).  And this even though this Court denied Appellants' stay request precisely because they had not shown "this court is likely to have jurisdiction *under 47 U.S.C. § 402(b).*"  Order at 1 (Document #2170860) (emphasis added).

Industry Appellants' plea (at 10-11) for a "pragmatic and flexible" approach to finality runs headlong into the statutory text they ignore.  *See also* DIRECTV.Opp.8.  Section 402(b) requires not just a final decision, but a decision "of the Commission," and there is none here.  Further, even under ordinary finality principles, there is no "Commission action" unless it "acts by majority vote"—even if the practical effect of inaction is to allow significant consequences.  *See Sprint Nextel Corp. v. FCC*, 508 F.3d 1129, 1132 (D.C. Cir. 2007) (no "agency action" where Commission's failure to garner majority vote had practical effect of granting forbearance petition).  Here, there has been no vote, and the Commission is still "active[ly] consider[ing]" Appellants' application for review. FCC.Mandamus.Opp.12.  Until it completes that "evaluation," *ibid.*, there is no action "of the Commission."

Finally, Appellants' policy arguments are simply erroneous.  They claim that "[a]ny agency" could give effect to decisions of subordinate parts and then require

"agency review" before an appeal. DIRECTV.Opp.7-8. This is wrong, as the default APA rule is that "an appeal to superior agency authority" does not preclude judicial review except "when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (quoting 5 U.S.C. § 704). Section 402(b) is a good-for-one-agency statute that reflects an intentional choice by Congress. *See also* 47 U.S.C. § 409(d) & note (stating section 155(c) "supersede[s] and modif[ies]" the default APA rule). This Court has enforced this FCC-specific jurisdictional bar for decades, and the sky has not fallen.

**B.      The Court Lacks Jurisdiction Under Section 155(c)(7).**

Appellants misapprehend Section 155(c)(7) because they ignore the text, structure, and "overall statutory scheme." *Jazz Pharms., Inc. v. Kennedy*, 141 F.4th 254, 261 (D.C. Cir. 2025).

Start with the basics. Section 155(c)(1) authorizes "the Commission" to "delegate any of its functions" to a bureau. 47 U.S.C. § 155(c)(1). However, because bureau orders are not orders "of the Commission," delegation creates a problem: absent further provision, orders on delegation would be effectively unreviewable. *See supra* I.A. Section 155(c)(4) solves that problem. It allows any person "aggrieved by" a Bureau order to apply for review by the Commission, which "shall … pass[ ] upon" such applications. *Id.* § 155(c)(4). Section 155(c)(4)

4

therefore allows parties to obtain the order "of the Commission" needed to establish jurisdiction under Section 402(b).

Section 155(c)(7) facilitates that process. Its first sentence provides that "[t]he filing of an application for review … shall be a condition precedent to judicial review." 47 U.S.C. § 155(c)(7). That triggers Commission-level review. But it does not itself result in a *decision* "of the Commission" and so cannot create jurisdiction under Section 402(b). Therefore, the second sentence provides: "The time … within which an appeal must be taken under section 402(b) of this title, shall be computed from the date upon which public notice is given of orders *disposing of all applications for review* filed in any case." *Ibid.* (emphasis added). Only upon the Commission's disposition of an application for review can a party bring an appeal. Without that disposition, there is no order "of the Commission." *Id.* § 402(b); *see TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 134 (D.C. Cir. 1989) ("Where agency rehearing is mandated by statute, those statutes necessarily dictate when a litigant may petition for court review.").

Appellants' contrary interpretation of Section 155(c)(7) ignores the statutory text and structure. They argue that Section 155(c)(7) gives "the aggrieved party the option of deferring judicial review until the resolution of" an application for review. Industry.Opp.4-5; DIRECTV.Opp.9. The statute does no such thing—it prescribes when "an appeal must be taken," not when a party may choose to proceed early.

5

Furthermore, then-Judge Scalia rejected Appellants' exact argument. He explained that when Congress provides the time "within" which a party must appeal, it creates a filing window—not a filing deadline. *See W. Union Tel. Co. v. FCC*, 773 F.2d 375, 377 (D.C. Cir. 1985). That "preclud[es] petitions filed … before" the window opens. *Ibid.*; *see also Waterway Commc'ns Sys., Inc. v. FCC*, 851 F.2d 401, 405-06 (D.C. Cir. 1988).

Then-Judge Scalia's filing-window interpretation aligns with the statutory text and structure here. Indeed, there would be *nothing to review* if a party appealed before the FCC resolved an application for review, because there would be no order "of the Commission"—only an order "of the Bureau." That is why Section 155(c)(7) does not speak in terms of optionality. It dictates when "an appeal *must* be taken" and how time "*shall* be computed." *See, e.g.*, *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171-72 (2016) (explaining that "*shall* (or *must*)" are "mandatory").

This Court was therefore right to hold that Section 155(c)(7) precludes review under these circumstances. In *International Telecard Association v. FCC*, 166 F.3d 387 (D.C. Cir. 1999), this Court rejected the same argument Appellants mount here: that "the act of filing an application for Commission review satisfies the statutory prerequisite to judicial review." *Id.* at 387-88. "Lest there be any misunderstanding," this Court "expressly h[e]ld" that a request for judicial review

"filed after a bureau decision but before resolution by the full Commission is subject to dismissal as incurably premature." *Id.* at 388. That holding is binding here, and Appellants' requests for "an *Irons* footnote," Industry.Opp.10 n.3, and "initial hearing *en banc*," DIRECTV.Opp.8 n.4, offer no basis to depart from the Court's preliminary ruling, *see* Order at 1-2 (Document #2170860)

### C.      No Equitable Exception Rescues Jurisdiction.

Unable to satisfy the statute, Industry Appellants turn to equity. That effort is misplaced.

For one, Section 402(b) imposes a jurisdictional bar. "Everyone agrees … that §402(b)" is the provision that "vests this Court with … jurisdiction" to review FCC licensing decisions. Industry.Opp.1.; *accord Waterway Commc'ns*, 851 F.2d at 405 ("if the appeal is not filed in accordance with the statutory terms [of Section 402(b)], 'it *must* be dismissed'" (emphasis in original) (quoting *National Black Media Coal. v. FCC*, 760 F.2d 1297, 1298 (D.C. Cir. 1985)). Because Appellants lack a Commission order to review under Section 402(b), *see supra* I.A., their challenge is jurisdictionally barred, and equitable exceptions have no role to play.

Industry Appellants' focus on whether Section 155(c)(7) is jurisdictional is misplaced. This argument does not fit the statutory scheme because Section 155(c)(7) is the mechanism by which a party disappointed with a decision of an FCC bureau can obtain a decision "of the Commission." *See supra* I.B. In other words,

7

Industry Appellants' pages and pages of arguments about why Section 155(c)(7) is *not* jurisdictional overlooks that they still need something that *is* jurisdictional to establish a basis for judicial review. If it is not Section 155(c)(7) and it is not Section 402(b), then they have no route to an appeal in this Court.

Even if this Court were to divorce Section 155(c)(7) from Section 402(b) and apply a freestanding finality analysis (which it should not), Section 155(c)(7) *would itself still be* a jurisdictional bar. Where, as here, a party requests further agency-level review of an order, that request, for purposes of judicial review, "renders the underlying agency action nonfinal (and hence unreviewable) with respect to that party." *Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1489 (D.C. Cir. 1994) (cleaned up). Under such circumstances, "this court has *no jurisdiction* to review" the order. *United Transp. Union v. ICC*, 871 F.2d 1114, 1118 (D.C. Cir. 1989) (emphasis added); *Flat Wireless, LLC v. FCC*, 944 F.3d 927, 932-33 (D.C. Cir. 2019) (holding the court "*lack[ed] jurisdiction*" due to request for "Commission to reconsider" agency decision (emphasis added)); *see also In re NTE Connecticut, LLC*, 26 F.4th 980, 987 (D.C. Cir. 2022) (explaining that party's invocation of mandatory agency-review provision in the Federal Power Act deprived court of "jurisdiction").

Even if Section 155(c)(7) were "nonjurisdictional," it is still "mandatory" and "not susceptible of [an] equitable approach." *Enbridge Energy, LP v. Nessel*, 146 S. Ct. 1074, 1081-82 (2026). As explained above, Section 155(c)(7) "speaks in strict,

8

mandatory terms," and it facilitates a "highly detailed [review] scheme." *Id.* at 1082-83. Further, this scheme reflects "an 'obvious concern with efficiency.'" *Id.* at 1084; *accord Bellsouth*, 17 F.3d at 1489 ("Even a modicum of concern for judicial economy militates strongly against concurrent review"). Jurisdictional or not, parties are not free to violate Section 155(c)(7).

In all events, equity does not support an exception here. Industry Appellants argue (at 6) for "equitable tolling," but there is nothing to "toll" as the filing window is not yet open. Even if tolling had some application here, Appellants' equity argument simply rehashes their irreparable-harm and unreasonable-delay contentions that Nexstar has already rebutted, *see* Nexstar.Mandamus.Opp.4-6, 7-13, and ignores the overwhelming public-interest benefits on the other side of the equation, *id.* at 22-23. As for "equitable estoppel," Industry Appellants lob (at 7) a lot of incendiary rhetoric, but their complaints ultimately boil down to: (1) an FCC bureau took an action that they do not like, and (2) the Commission is not reviewing that bureau action as quickly as they wish it would. Regulated parties (including Nexstar) often have these sorts of gripes with their regulators. But such gripes do not come anywhere close to the kind of "affirmative misconduct" that would allow "equitable estoppel against the government." *Pierce v. SEC*, 786 F.3d 1027, 1038 (D.C. Cir. 2015); *see also FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 577 (2025) ("agencies are entitled to a presumption of regularity").

## II.    DIRECTV'S DIGRESSION ABOUT AGENCY-LEVEL STAY PRACTICE IS IRRELEVANT.

DIRECTV offers one final Hail Mary. It asks (at 9-11) this Court to "revisit" the meaning of a statutory provision that is not at issue in this appeal in order to overrule a 40-year-old precedent about the FCC's agency-level stay practice.

The argument is forfeited. Nobody made it before the agency. *See Levine/Schwab P'ship v. FCC*, 61 F.4th 183, 186 (D.C. Cir. 2023) (citing 47 U.S.C. § 405(a)). Nobody raised it in their mandamus petitions or notices of appeal. And only an intervenor now presses this argument in briefing. *See Core Commc'ns, Inc. v. FCC*, 592 F.3d 139, 145-46 (D.C. Cir. 2010) (declining to consider "new arguments … raise[d] [by] intervenor").

Even if not forfeited, the argument is irrelevant. Foremost, it does not bear on this Court's jurisdiction. It is also not even an argument. Despite spending three pages talking about the "best reading" of Section 155(c)(3), DIRECTV never actually explains why its newfound reading is best. While the FCC does not get *Chevron* deference, neither does DIRECTV; it needs to advance an argument about why its reading is superior. Even post-*Chevron*, "[t]he holding[ ] of" *Committee To Save WEAM v. FCC*, 808 F.2d 113 (D.C. Cir. 1986), is "still subject to statutory *stare decisis*," and its "[m]ere reliance on *Chevron*" is not enough to "overrul[e]" it. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

This Court should disregard DIRECTV's digression.

10

## CONCLUSION

The Court should dismiss the appeals.

June 5, 2026

Respectfully Submitted,

/s/ Thomas M. Johnson, Jr.
Thomas M. Johnson, Jr.
Kathleen A. Kirby
Jeremy J. Broggi
Eve Klindera Reed
Boyd Garriott
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000
TMJohnson@wiley.law

*Counsel for Nexstar Media Inc.*

11

**CERTIFICATE OF COMPLIANCE**

This response complies with Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,351 words.  This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

June 5, 2026                                      */s/ Thomas M. Johnson, Jr.*
                                                  Thomas M. Johnson, Jr.

## CERTIFICATE OF SERVICE

I certify that on June 5, 2026, I caused the foregoing to be served upon all counsel of record via the Clerk of Court's CM/ECF notification system.

June 5, 2026

*/s/ Thomas M. Johnson, Jr.*
Thomas M. Johnson, Jr.